126 N.J. Super. 264 (1974)
314 A.2d 74
JOSEPHINE PERILLO, ADMINISTRATRIX AD PROSEQUENDUM AND GENERAL ADMINISTRATRIX OF THE ESTATE OF RALPH J. PERILLO, DECEASED AND JOSEPHINE PERILLO, INDIVIDUALLY AND AS MOTHER AND NATURAL GUARDIAN OF JUNE ANN PERILLO AND RALPH PERILLO, PLAINTIFFS-APPELLANTS,
v.
THOMAS J. DREHER AND THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 18, 1973.
Decided January 16, 1974.
*266 Before Judges HALPERN, MATTHEWS and BISCHOFF.
Mr. Peter J. Giovine argued the cause for appellants.
Mr. Michael E. Cunningham argued the cause for respondent Dreher (Messrs. Starkey, Turnbach & White, attorneys).
Mr. John S. Fitzpatrick, Deputy Attorney General, argued the cause for respondent State of New Jersey (Mr. George F. Kugler, Jr., Attorney General, attorney; Mr. Stephen Skillman, First Assistant Attorney General, of counsel).
Mr. William G. Marriott appeared for respondent State of New Jersey (Messrs. Lane and Evans, attorneys).
PER CURIAM.
This is a wrongful death action instituted on November 9, 1972 by Josephine Perillo as administratrix ad prosequendum against Thomas J. Dreher and the State of New Jersey. On December 31, 1970 Ralph Perillo, a project manager for Kaufman and Broad residential developers, was involved in a collision on Hooper Avenue, Dover Township, with a vehicle driven by Trooper Thomas J. Dreher of the New Jersey State Police. Perillo died of injuries sustained in the collision on January 12, 1971.
By letter dated December 11, 1972 the State of New Jersey instructed its insurance carrier, Hartford Insurance Group, to assert the defense of sovereign immunity. Following argument on the motion on March 23, 1973, Judge Grossman ordered summary judgment in favor of defendant State of New Jersey. While no motion for leave to appeal was made, we have elected to entertain the appeal on its merits because of the obvious public policy question raised. The Attorney General has been granted leave to intervene.
*267 In Willis v. Department of Conservation and Economic Development, 55 N.J. 534 (1970), the doctrine of sovereign immunity was abolished. However, the effective date of this rule was postponed until January 1, 1971 to allow "an expression of legislative will." Soon thereafter, the Legislature enacted L. 1970, c. 98, § 1, effective June 15, 1970, which extended the bar until July 1, 1971. The statute was subsequently amended twice, extending the bar on actions against the State in tort to July 1, 1972. The statute in its final form, N.J.S.A. 52:4A-1, provided:
Except for actions founded upon the Constitution of this State or the United States or an express provision of the statutory laws of this State, no action shall be instituted or continued against the State or any department or other agency thereof for the recovery of money damages, based on tort, where the cause of action accrues prior to July 1, 1972.
On July 1, 1972 the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq., became effective and specifically provided in section 12-3 for prospective application only:
This act applies only to claims that accrue on or after its effective date. Claims that accrued prior to the effective date of this act are not affected by this act but shall continue to be governed by the law applicable thereto prior to the effective date of this act; provided however that this act shall apply to the suit presently pending between Willis and Department of Conservation and Economic Development, Superior Court, Docket No. L-9817-66.

I
Plaintiff argues that N.J.S.A. 52:4A-1 is interim legislation in the sense that it imposes a moratorium only, rather than a temporary reinstatement of the pre-Willis rule. In P.T. & L. Construction Co. v. Commissioner, Department of Transportation, 57 N.J. 439 (1971), the court adopted the Attorney General's interpretation of N.J.S.A. 52:4A-1 of interim legislation. In view of this concession, the court found that the purpose of the statute was not to repudiate *268 the State's contractual obligations. Plaintiff seeks to extend this interpretation to an action in tort against the State. It must be recognized that in the context of governmental contract immunity such an interpretation was necessary to avoid the possibility of an unconstitutional impairment of contract rights. No problem of a similar dimension is present in the context of governmental tort immunity to warrant an extension of second P.T. & L. rationale to this case. In fact, the third P.T. & L. Construction Co. v. Commissioner, Department of Transportation, 60 N.J. 308, 315 (1972), specifically recognized the different policy considerations applicable to tort claims. It should also be noted that N.J.S.A. 52:4A-1 was amended to continue the bar to claims in tort after third P.T. & L.
As amended, the language of the statute does not lend itself to an interpretation of moratorium. The California experience is illuminating on this point. Following Muskopf v. Corning Hospital District, 55 Cal.2d 211, 11 Cal. Rptr. 89, 359 P.2d 457 (Cal. 1961), in which the doctrine of governmental tort immunity was judicially abrogated, the Legislature enacted L. 1961, c. 1404, § 1, which in language similar to our N.J.S.A. 52:4A-1 reinstated governmental tort immunity. However, section 4 of the same statute expressly provided that claims arising after Muskopf would be recognized at a later date. Section 4 provided in part:
On or after [date], an action may be brought and maintained in the manner proscribed by law on any cause of action which arose on or after February 27, 1961 [date of Muskopf] and before [date moratorium expired] and upon which an action was barred during that period by the provisions of this act, * * *.
In Corning Hospital District v. Superior Court, 57 Cal.2d 488, 20 Cal. Rptr. 621, 370 P.2d 325 (Cal. 1962), the court held that the statute obviously did not permanently stay the rule of Muskopf. Yet the same court in Thelander v. Superior Court of Placer County, 58 Cal.2d 811, 26 Cal. Rptr. 643, 376 P.2d 571 (Cal. 1962), recognized that legislation *269 could be enacted during the moratorium period reinstating governmental tort immunity.
While the New Jersey statute is unquestionably interim in the sense that it is temporary, it is barren of any provision which specifically indicates that plaintiff's cause of action will be entertained after July 1, 1972.

II
Plaintiff next argues that Czyzewski v. Schwartz, 110 N.J. Super. 255, 259 (App. Div. 1970), recognizes Willis as the governing rule after January 1, 1971. Czyzewski is hardly authority for this proposition since it was decided prior to the effective date of N.J.S.A. 52:4A-1. Moreover, the majority decision was addressed to the question of the trooper's individual liability.

III
Plaintiff contends that if N.J.S.A. 52:4A-1 temporarily reinstates governmental tort immunity, and if N.J.S.A. 59:1-1 et seq. retroactively applies only to the Willis claim, the statutes are unconstitutional.
The Legislature may, within constitutional limits, nullify or qualify a ruling. Rosenberg v. North Bergen, 61 N.J. 190 (1972). See also, N.J.S.A. 2A:53A-7 et seq., which largely restores the charitable immunity doctrine discarded in Collopy v. Newark Eye and Ear Infirmary, 27 N.J. 29 (1958). In Egan v. Erie Railroad Co., 29 N.J. 243 (1959), Justice Proctor observed:
There is no question that the Legislature, subject to constitutional limitations, may fix the State's policy as to the rules of conduct which result in liability or non-liability. * * * In such circumstances it is the duty of the courts to apply the legislative will notwithstanding that it may conflict with the court's own philosophy. [at 252]
Plaintiff seems to argue that a legislative reinstatement of sovereign immunity deprives plaintiff of a vested *270 right. In Rosenberg v. North Bergen, above, a statute limiting the judicially expanded tort immunity of architects and contractors was upheld. There, plaintiff claimed that the statute, N.J.S.A. 2A:14-1.1 as applied, barred her cause of action before it had arisen. In response to this contention the court observed:
This formulation suggests a misconception of the effect of the statute. It does not bar a cause of action; its effect, rather is to prevent what might otherwise be a cause of action, from ever arising. * * * The injured party literally has no cause of action. * * * The function of the statute is thus rather to define substantive rights than to alter or modify a remedy. [61 N.J. at 199]
The present case is analogous to the Rosenberg situation. Prior to Willis plaintiff had no cause of action against the State, and prior to the accident the Legislature temporarily reinstated the State's immunity. Therefore, plaintiff never had a cause of action against the State.
Plaintiff's argument that the Legislature should have provided coverage to all parties whose cause of action accrued after January 1, 1971 may be answered shortly by observing that courts do not question legislative policy or wisdom. N.J. Sports & Exposition Authority v. McCrane, 61 N.J. 1, 30 (1972).
The next prong of plaintiff's constitutional argument is whether a rational basis exists for a differentiation between the claimant in Willis and all other similarly situated claimants. On the question of equal protection the court has observed in N.J. Restaurant Ass'n v. Holderman, 24 N.J. 295 (1957):
The burden of demonstrating that a statute contravenes the equal protection clause is extremely formidable, as is attested by the long trail of failure. In addition to the strong presumption of constitutionality with which all organic challenges are approached, one who assails a statute on this ground must contend with principles of unusual elasticity. It is easily stated that the classification (1) must not be palpably arbitrary or capricious, and (2) must have a rational basis in relation to the specific objective of the legislation. But the *271 second proposition is qualified by limitations which compounded the difficulties of one who assails the legislative decision. Thus it is not enough to demonstrate that the legislative objective might be more fully achieved by another, more expansive classification, for the Legislature may recognize degrees of harm and hit the evil where it is most felt. * * * The Legislature may thus limit its action upon a decision to proceed cautiously, step by step, or because of practical exigencies, including administrative convenience and expense, * * * or because of "some substantial consideration of public policy or convenience or the service of the general welfare." * * * Hence it may "stop short of those cases in which the harm to the few concerned is thought less important than the harm to the public that would ensue if the rule laid down were made mathematically exact." * * * [at 300-301]
See Washington National Ins. Co. v. Board of Review, 1 N.J. 545 (1949); Two Guys From Harrison, Inc. v. Furman, 32 N.J. 199, 218 (1960).
A similar argument that prospective application of Willis violated equal protection was rejected in Harris v. State, 118 N.J. Super. 384, 389 (App. Div. 1972), rev'd on other grounds 61 N.J. 585 (1972). We noted:
The short answer to this contention is to be found in Willis where, at 55 N.J. 541, the court refuses retroactive application and rejects "other claims in being," but permits Willis to proceed "* * * for the practical reason that case law is not likely to keep up with the needs of society if the litigant who successfully champions a cause is left only with that distinction." Incentive "to challenge existing practices or prior holdings which, in the public interest, ought to be reviewed," reasonably justifies disparity of treatment.
Plaintiff argues that Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968), and Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972), require a finding that the prospective application of the New Jersey Tort Claims Act to all but the Willis claim violates the equal protection clause of the Fourteenth Amendment. In Levy and Weber illegitimate children were omitted from statewide compensation schemes. The court held that the status of illegitimacy bore no reasonable relation to the statutory purpose, i.e., compensation *272 of dependents. However, prospective application of the Tort Claims Act is a state of fiscal and administrative necessity. Moreover, allowance of the Willis claim represents legislative recognition of established judicial policy to provide relief to the litigant before the court.

IV
Prior to instituting suit plaintiff received an assurance from the Executive Director of the Office of Fiscal Affairs, New Jersey State Legislature, that the State would not assert the defense of sovereign immunity in any judicial proceeding. Plaintiff claims that by this action the State waived the defense of sovereign immunity.
N.J.S.A. 52:17A-4(c) vests the Attorney General with the exclusive power to control all litigation to which the State is a party. Claims against the State are processed through a Subcommittee on Claims of the Joint Legislative Appropriations Committee; the Legislature, however, maintains no control over litigation absent a statutory modification of the Attorney General's power. A legislative staff "waiver" accordingly does not bind the State, and it is undisputed that the Attorney General specifically authorized the use of the sovereign immunity defense by the insurance carrier in this case under the terms of the State's insurance coverage.
Affirmed.