286 N.J. Super. 549 (1996)
670 A.2d 31
DELISHA KEMP, A MINOR, BY HER PARENT AND NATURAL GUARDIAN, DEBRA WRIGHT AND DEBRA WRIGHT IN HER OWN RIGHT, PLAINTIFFS-RESPONDENTS,
v.
STATE OF NEW JERSEY, COUNTY OF BURLINGTON, RIVERSIDE BOARD OF EDUCATION, AND RIVERSIDE HIGH SCHOOL, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 11, 1995.
Decided January 17, 1996.
*551 Before Judges HAVEY, CONLEY and BRAITHWAITE.
Thomas E. Doig, Jr., Deputy Attorney General, argued the cause for appellant State of New Jersey (Deborah T. Poritz, Attorney General, attorney; Joseph L. Yannotti, Assistant Attorney General, of counsel; Mr. Doig, on the brief).
*552 Timothy E. Annin argued the cause for appellant County of Burlington (Capehart & Scatchard, P.A., attorneys; Mr. Annin, of counsel; Alison M. Nissen, on the brief).
Frank G. Basile argued the cause for appellants Riverside Board of Education and Riverside High School (Basile & Testa, attorneys; Mr. Basile, on the brief).
David K. Cuneo argued the cause for respondents (David K. Cuneo, attorney; Mr. Cuneo, on the brief).
The opinion of the court was delivered by CONLEY, J.A.D.
Plaintiff Debra Wright (hereinafter referred to as plaintiff), then a high school senior, received a rubella vaccination on April 18, 1975, through a free public vaccination clinic instituted and supervised by defendants and jointly operated by the State and Burlington County's Health Department in response to a measles outbreak. Her daughter, plaintiff Delisha Kemp was born approximately eight months later with congenital rubella syndrome. It is undisputed that rubella vaccination is contraindicated for females who are pregnant. Defendants concede that at the time of the vaccination clinic, the vaccine was not administered to any female suspected of being sexually active. The initial screening examination of each participant included inquiry as to their sexual activity. In her personal injury lawsuit on behalf of herself and her daughter, plaintiff contends that defendants were negligent in conducting this examination by failing to ascertain her pregnancy before giving her the vaccination. She also contends that she was not warned during the examination that a child conceived within three months of vaccination could suffer severe mental and physical defects. Defendants, all public entities, moved for summary judgment on several grounds, including the immunities under *553 N.J.S.A. 59:6-4 and N.J.S.A. 26:11-2 (now repealed).[1] As to all defendants, the motion judge denied summary judgment on the immunity issues. We granted leave to appeal and now reverse.[2]

I
We first consider N.J.S.A. 59:6-4 which states:
Except for an examination or diagnosis for the purpose of treatment, neither a public entity nor a public employee is liable for injury caused by the failure to make a physical or mental examination, or to make an adequate physical or mental examination, of any person for the purpose of determining whether such person has a disease or physical or mental condition that would constitute a hazard to the health or safety of himself or others. For the purposes of this section, "public employee" includes a private physician while actually performing professional services for a public entity as a volunteer without compensation. [Emphasis added].
Putting aside the exception for examinations conducted "for the purpose of treatment," N.J.S.A. 59:6-4 applies to examinations conducted "for the purpose of determining whether [the person examined] has a disease or physical or mental condition that would constitute a hazard to the health or safety of himself or others." See for example Delbridge v. Schaeffer, 238 N.J. Super. 323, 364-66, 569 A.2d 872 (Law Div. 1989) (the immunity in N.J.S.A. 59:6-4 protected a DYFS physician whose examination of subsequently abused child's father was alleged to have been negligent).
From one perspective, the rubella vaccination clinic, which included a preliminary examination of each person vaccinated, *554 does not fit precisely within the scope of a public health examination to determine "whether [the person examined] has a disease or physical or mental condition" that would constitute a health hazard. The clinic itself was to vaccinate against measles, not to determine whether the participants had measles. And, thus, the trial judge initially concluded that N.J.S.A. 59:6-4 did not apply to the rubella vaccination clinic.
On the other hand, plaintiff's suit focuses upon the failures and/or inadequacies of the screening examination conducted of each person to be vaccinated. It appears undisputed that one of the purposes of the examination was to ascertain the sexual activity of the female participants so that the vaccine would not be given to a person who might be at a high risk of harm arising therefrom. The "examination," thus, was a prevaccination interview of each student. Viewed from this perspective, that examination was, indeed, designed to ascertain whether the person being examined had a physical condition, i.e., potential pregnancy, that would constitute a hazard to her and her unborn child in the event she was vaccinated. Compare Sava v. Fuller, 249 Cal. App.2d 281, 292, 57 Cal. Rptr. 312 (Ct.App. 1967) (Cal. Gov't Code § 855.6, California's counterpart to N.J.S.A. 59:6-4, did not apply to examination by State biologist of a plant that might have been ingested by a child at the request of child's doctor and to aid in his diagnosis and treatment of the child) with Lucas v. City Long Beach, 60 Cal. App.3d 341, 350, 131 Cal. Rptr. 470 (Ct.App. 1976) (Cal. Gov't Code § 855.6 provided immunity to a prison official who failed to obtain a medical examination of an intoxicated prisoner who later committed suicide) and Kravitz v. State of California, 8 Cal. App.3d 301, 306, 87 Cal. Rptr. 352 (Ct.App. 1970) (Cal. Gov't Code § 855.6 provided immunity to staff of state hospital for its inadequate examination of a person committed as criminally insane and leading to his release).
We consider as well the Comment to N.J.S.A. 59:6-4 that describes the immunity as pertaining not only to the failure to perform adequate "public health examinations, such as [public] *555 tuberculosis ... examinations," but also the failure to perform adequate "physical examinations to determine the qualifications of boxers and other athletes, and eye examinations for vehicle operator applicants." See also Senate Labor, Industry and Professions Committee Statement, No. 524.
The screening examination here was not to determine whether the participants in the vaccination clinic had measles. As we have said, it does not, thus, neatly fit within the "public tuberculosis examination" example set forth in the Comment. But because its scope was to ascertain whether there were any disqualifying conditions for the vaccination, it is comparable to eye examinations for drivers or physical examinations for athletes before they compete. We conclude, therefore, that the examination here which plaintiff alleges was inadequate falls within the scope of the immunity provided by N.J.S.A. 59:6-4.
We next consider whether, nonetheless, the exception contained therein precludes reliance upon the immunity, as the trial judge concluded. That exception applies to an examination that is conducted "for the purpose of treatment." Was the initial prequalifying examination "for the purpose of treatment?" We are not aided by any precedent in this State. Neither are we particularly helped by California precedent. E.g., Kleinke v. Ocean City, 147 N.J. Super. 575, 579, 371 A.2d 785 (App.Div. 1977). As far as we can tell only one case in California has treated the issue, albeit in the context of whether an AIDS blood test conducted by a medical center employee qualifies as an "examination or diagnosis for the purpose of treatment." Smith v. County of Kern, 20 Cal. App. 4th 1826, 1833, 25 Cal. Rptr.2d 716, 721 (1993), review denied (1994). Smith did not resolve that issue on the merits. See id. at 1835, 25 Cal. Rptr.2d at 723 (allowing plaintiff to file an amended complaint alleging negligent performance by medical personnel in taking blood test for the purpose of assisting patient examination or diagnosis). Smith did, however, frame the pertinent inquiry as "whether the public employee's actions were taken to facilitate the delivery of medical diagnosis or care to the individual who is *556 injured by the employee's activities." Ibid. If they are, the exception is triggered and the immunity does not apply. This is consistent with the observation in the Comment to N.J.S.A. 59:6-4 that the immunity was not intended to apply to "examinations for the purpose of treatment such as are ordinarily made in doctors' offices and public hospitals." And see Senate Labor, Industry and Professions Committee Statement, supra.
The plain meaning of "treatment," see e.g., Chase Manhattan Bank v. Josephson, 135 N.J. 209, 225, 638 A.2d 1301 (1994), might support a conclusion that the examination here falls within the exception. See Webster's Third New International Dictionary Unabridged 2435 (3d Ed. 1981) (defining "to treat" as: "to care for (as a patient or part of the body) medically or surgically: deal with by medical or surgical means ... to seek cure or relief of (as a disease) ....); Black's Law Dictionary 1502 (6th ed. 1990) (defining "treatment" as: [a] broad term covering all steps taken to effect a cure of an injury or disease; including examination and diagnosis as well as application of remedies"); Stedman's Medical Dictionary-Fifth Unabridged Lawyers' Edition 1477 (5th ed. 1982) (defining "treatment" as "medical or surgical management of a patient"). "Treatment," in its medical sense, encompasses preventive or prophylactic efforts, which means: "the institution of measures designed to protect a person from an attack of a disease to which he has been, or is liable to be exposed." Stedman's, supra 1477.
Applying these definitions, the rubella vaccination program could be said to fall within the parameters of "treatment." "Treatment," as it has been defined, includes preventive measures, and is not limited solely to alleviating preexisting conditions. And see Calabrese v. Trenton State College, 162 N.J. Super. 145, 156, 392 A.2d 600 (App.Div. 1978), aff'd, 82 N.J. 321, 413 A.2d 315 (1980) (stating that "administration of a given drug" is a treatment in medical malpractice action where plaintiff alleged failure to warn of known dangers associated with anti-rabies vaccine); Boyd v. Louisiana Medical Mut. Ins. Co., 593 So.2d 427, 428-29 (La.Ct. *557 App. 1991), writ denied, 594 So.2d 877 (La. 1992) (considering oral polio vaccine as medical treatment for purposes of determining whether physician adequately disclosed risks of treatment as required by state informed consent statute); In re Christine M., 157 Misc.2d 4, 595 N.Y.S.2d 606, 613 (N.Y. Fam. Ct. 1992) (finding that parents' failure to inoculate children against measles was deprivation of treatment rising to the level of "medical neglect" under Family Court Act); People, on Complaint of Burke, v. Steinberg, 190 Misc. 413, 73 N.Y.S.2d 475, 477 (N.Y.Mag.Ct. 1947) (concluding that vaccination against smallpox is "treatment" of a human being under statute defining practice of medicine).
But, though plain meaning interpretations are generally favored, we do not strictly adhere to a literal meaning in all cases. If enforcement of a statute's plain meaning yields results that are wholly "inconsistent with the statutory scheme," that interpretation must be rejected. Chase Manhattan Bank v. Josephson, supra, 135 N.J. at 225, 638 A.2d 1301. We are convinced that is the case here. Primarily based upon our analysis of the Comment to N.J.S.A. 59:6-4 and the Senate Labor, Industry and Professions Committee Statement, we are convinced that the exception was not intended to apply to all examinations that might be characterized as conducted for some form of treatment. Rather, within that somewhat broad category, we think the Legislature intended to exclude from immunity the type of medical examinations that we normally associate with treatment and care provided by doctors and hospitals  the ordinary provision of care. Simply put, in our view, the public health measles immunization clinic was not that type of ordinary medical care, and the examination conducted pursuant thereto does not fall within the exception.

II
At the time of plaintiff's vaccination, N.J.S.A. 26:11-12 immunized the actions or inactions of county health boards, their members *558 and their agents, who were responsible for preventing the spread of contagious disease. It provided:
No member, officer or agent of a county board shall be sued or held liable for any act done or omitted in good faith and with ordinary discretion on behalf of or under the county board or pursuant to its rules or ordinances.
There is no dispute but that the rubella vaccination program would fall within the scope of this statute where the actions or inactions in connection therewith were "in good faith and with ordinary discretion."[3]
The statute, however, was repealed in 1976, N.J.S.A. 26:11-12, repealed by Local Health Services Act, L. 1975, c. 329, § 21, several months after the birth of plaintiff's daughter. Preliminarily, plaintiff contends that, in fact, the 1972 Tort Claims Act repealed N.J.S.A. 26:11-12. The Tort Claims Act was expressly prospective in effect, applying to causes of action that occurred subsequent thereto. N.J.S.A. 59:12-3. "All acts and parts of acts inconsistent ... to the extent of such inconsistency ..." were expressly repealed, "including without limitation: P.L. 1971, c. 199, § 26 (C. 40A:12-26); N.J.S. 18A:20-35; N.J.S. 38A:4-9, N.J.S. 38A:4-10; R.S. 53:1-22." N.J.S.A. 59:12-2.
N.J.S.A. 26:11-12 was not expressly repealed. Although plaintiff contends that it was impliedly so repealed, implied repealers are disfavored. E.g., N.J. State Policemen's Benevolent Ass'n of N.J. v. Town of Morristown, 65 N.J. 160, 164, 320 A.2d 465 (1974). Moreover, we do not view the immunity in N.J.S.A. 26:11-12 as inconsistent with the Tort Claims Act. Indeed, the immunity *559 provided in N.J.S.A. 26:11-12 is consistent with that in N.J.S.A. 59:6-3 and N.J.S.A. 59:6-4.
We recognize that, subsequently, the Legislature did repeal N.J.S.A. 26:11-12. N.J.S.A. 26:11-12, repealed by Local Health Service Act, L. 1975, c. 329, § 21. Legislative history in connection therewith is not helpful in explaining why. It may simply be that the Legislature perceived that the immunity in N.J.S.A. 26:11-12 was otherwise provided by the Tort Claims Act and, therefore, redundant.
Furthermore, as plainly explained in the Comment to N.J.S.A. 59:2-1, "the basic statutory approach of the New Jersey Tort Claims Act shall be that immunity of all governmental bodies in New Jersey is reestablished." The Comment to Subsection (b) of that statute added: "Subsection (b) is intended to insure that any immunity provisions provided in the act or by common law will prevail over the liability provisions. It is anticipated that the courts will realistically interpret both the statutory and common law immunities in order to effectuate their intended scope." And see N.J.S.A. 59:1-2, 2-1(b). The law is, moreover, well established that "immunity is the dominant theme of the Act" and, accordingly, where immunity applies, no liability exists. E.g., Weiss v. New Jersey Transit, 128 N.J. 376, 383, 608 A.2d 254 (1992); Birchwood Lakes Colony Club v. Medford Lakes, 90 N.J. 582, 596, 449 A.2d 472 (1982). We, therefore, reject plaintiff's argument that N.J.S.A. 26:11-12 was impliedly repealed in 1972 by the Tort Claims Act.
The issue then becomes whether its repeal in 1976 now permits plaintiff to sue defendants despite the fact that the actions or inactions she complains of in her complaint were immunized at the time of her vaccination and at the time of the birth of the infant plaintiff, both of which occurred in 1975 and prior to the repeal. That issue implicates two somewhat conflicting principles of statutory construction. On the one hand, it has been generally *560 said that a court is to apply the law in effect at the time that it renders its decision. Phillips v. Curiale, 128 N.J. 608, 615-16, 608 A.2d 895 (1992); Parsippany Hills Associates v. Rent Leveling Bd. of Parsippany-Troy Hills Tp., 194 N.J. Super. 34, 476 A.2d 271 (App.Div.), certif. denied, 97 N.J. 643, 483 A.2d 169 (1984). Where the matter involves the creation of a cause of action that did not exist at the time of the underlying action or conduct that forms the basis for the cause of action, application of this general proposition would, effectively, result in a retroactive application of the new law.
Retroactive application of changes in the law, on the other hand, are not generally favored. Phillips v. Curiale, supra, 128 N.J. at 615, 608 A.2d 895; Gibbons v. Gibbons, 86 N.J. 515, 521, 432 A.2d 80 (1981). "It is a fundamental principle of jurisprudence that retroactive application of new laws is usually unfair. There is a general consensus that notice or warning of the rule should be given in advance of the actions whose effects are to be judged. The hackneyed maxim that everyone is held to know the law, itself a principle of dubious wisdom, nevertheless presupposes that the law is at least susceptible of being known. But this is not possible concerning law that has yet to exist." 2 Sutherland, Statutory Construction, § 41.02 at 340 (5th ed. 1992).
These two, ostensibly discordant, principles recently prompted Justice O'Hern in writing the majority opinion in Phillips to comment upon the "tension" created thereby, 128 N.J. at 616, 608 A.2d 895, and prompted Justice Clifford, somewhat bluntly, to dissent "[o]nly from so much of the Court's otherwise straightforward and eminently sensible opinion as attempts to come to grips with the slippery doctrine of retroactivity," 128 N.J. 630, 608 A.2d 895, and, in doing so, to view retroactivity as having "nothing to do with this case":
The problem is not one of applying today's legislation to cases that antedate the effective date of the legislation [which in fact it was]; rather the question is *561 whether by the every terms of its enactment, the Legislature itself applied the legislation to a given situation  here, plaintiff's case. I would not muddy the waters of the already  murky waters of retroactivity analysis.
[128 N.J. at 630, 608 A.2d 895, Clifford, J. dissenting].
But whether the effect of the 1976 repeal of the immunity provided in N.J.S.A. 26:11-12 is analyzed under the general proposition concerning application of the law at the time of decision (a proposition that here would result in plaintiff and the infant plaintiff being accorded a cause of action where they had none in 1975), or analyzed under the proposition that new laws are generally applied prospectively (resulting here in defendants' right to rely upon the substantive law in effect at the time of their actions in 1975), we think the same result is required under either maxim.
First, the principle that it is the law in effect at the time of decision that applies, arises when the law changes during the pendency of an action. It is a principle that does not apply to completed matters. The causes of action here were not pending at the time N.J.S.A. 26:11-12 was repealed; indeed, as we will further articulate, there was no cause of action at that time. It may well, thus, be argued that the underlying transaction, i.e., the vaccination and alleged negligent examination, could be compared to a closed matter. Moreover, the principle is not applicable where its application would result in manifest injustice or where there is a statutory directive or legislative history to the contrary. Phillips v. Curiale, supra, 128 N.J. at 616, 608 A.2d 895.[4]And *562 see Strube v. Travelers Indem. Co. of Ill., 277 N.J. Super. 236, 649 A.2d 624 (App.Div. 1994), aff'd o.b., 142 N.J. 570, 667 A.2d 188 (1995).
Although there is no direct legislative history here, the general legislative intent with respect to immunities for public entities as expressed in its enactment of the Tort Claims Act and as we have previously set forth, is to preserve such immunity. The Tort Claims Act was, principally, designed to limit negligence and tort claims against public entities, not broaden them; it was, thus, expressly implemented prospectively. See N.J.S.A. 59:1-2; N.J.S.A. 59:2-1(a). And see Perillo v. Dreher, 126 N.J. Super. 264, 269, 314 A.2d 74 (App.Div.), certif. denied, 64 N.J. 512, 317 A.2d 725 (1974).
Further, we are of the view that it well could be said that manifest injustice to the public bodies, as well as the ultimately responsible taxpayers, would result should the subsequent repeal be viewed as abrogating the immunity at the time the determination to provide the free vaccinations was made and implemented. Simply said, had the public entities not been protected by the immunity at that time, the risks of the vaccination may well have been viewed as sufficient to override the potential health benefits and may have, consequently, precluded the provision of the vaccination. The potential absence of liability insurance in reliance upon the immunity may also be critical. See Payton v. Abbott Labs, 386 Mass. 540, 566, 437 N.E.2d 171, 186 (Mass. 1981).
We would venture to say, further, that while what occurred to plaintiff and her child has been devastating to them, the overall benefit to those who were vaccinated without incident, as well as to the general public, was substantial. These considerations would counsel against application of the general principle of applying the existing law at the time of decision. And see Darrow v. Hanover Township, 58 N.J. 410, 415-20, 278 A.2d 200 (1971) (abrogation of interspousal immunity by Immer v. Risko, 56 N.J. *563 482, 267 A.2d 481 (1970), is prospective, applying to causes of action arising after Immer).
An analysis of the prospective/retroactive principles leads as well to a conclusion that the 1976 repeal should not be applied retroactively to change the law existing at the time of the occurrence of the conduct that forms the basis of the causes of action here occurred. As we have said, generally prospective application of new laws is favored. There are, however, three circumstances where retroactive application of a statute may be justified. Phillips v. Curiale, supra, 128 N.J. at 617-18, 608 A.2d 895; Gibbons v. Gibbons, supra, 86 N.J. at 522, 432 A.2d 80. Retroactive application is desirable, first, where legislative intent expressly or impliedly indicates so. Gibbons, supra, 86 N.J. at 522, 432 A.2d 80. A statute may be applied retroactively, second, if it is ameliorative or curative in nature. Id. at 523, 432 A.2d 80. Third, fulfillment of the parties' reasonable expectations may require a statute's retroactive application. Ibid.; see 2, Sutherland, supra, § 41.05 at 366 (stating that principles of fundamental fairness dictate that "settled expectations honestly arrived at with respect to substantial interests ought not to be defeated.").
As we have said, the Legislature neither expressly nor impliedly intended the repeal of N.J.S.A. 26:11-12 to apply retroactively such that new causes of action would exist where none did at the time of the disputed action. Further, we do not perceive the repeal of N.J.S.A. 26:11-12 as being either curative or ameliorative; it may simply have reflected the Legislature's assumption that the immunity was contained in the Tort Claims Act, or it may have been an oversight. There is no indication that N.J.S.A. 26:11-12 was repealed to cure a perceived harm. Neither are there any reasonable expectations of the parties involved that require retroactive repeal.
Furthermore, we consider the issue within the context of our Supreme Court's recognition that a statute should not be given retroactive effect without considering:

*564 whether the affected party relied, to his or her prejudice, on the law that is now to be changed as a result of the retroactive application of the statute, and whether the consequences of this reliance are so deleterious and irrevocable that it would be unfair to apply the statute retroactively.
[Gibbons v. Gibbons, supra, 86 N.J. at 523-24, 432 A.2d 80].
An example of this concern is reflected by Willis v. Department of Conservation & Economic Dev., 55 N.J. 534, 264 A.2d 34 (1970), in which, mindful of the repercussions to governmental entities which would be generated by a retroactive application of its abolition of sovereign immunity, the Court applied its decision prospectively, except as to the plaintiff therein. Anticipating the enhanced burdens on the government stemming from its decision, the Court noted:
There are no appropriations to pay the obligations the courts might declare, nor even, perhaps, to handle the caseload which may ensue. The executive branch will need time to prepare for the additional burden. Then, too, the Legislature may wish to require timely notice of claims to permit an opportunity to investigate. Or the Legislature may choose to fix a monetary limit on recoveries, or to exclude some category of damages, or to adopt a concept of liability different from that of the common law, or to entrust the whole matter to an administrative agency.
[Id. at 541, 264 A.2d 34].
And see Perillo v. Dreher, supra, 126 N.J. Super. at 269, 314 A.2d 74. Indeed, the Legislature so agreed. N.J.S.A. 59:12-3. Cf. Darrow v. Hanover Township, supra, 58 N.J. at 415-20, 278 A.2d 200.
A statute that changes settled law and is substantive in nature is applied prospectively unless otherwise provided by the Legislature. Thomas v. Romeis, 234 N.J. Super. 364, 374, 560 A.2d 1267 (App.Div. 1989). We view the repeal of N.J.S.A. 26:11-12 to be such a change of settled and substantive law, without legislative expression of retroactive application.
Plaintiff contends that our decision in Small v. Department of Corrections, 243 N.J. Super. 439, 441, 579 A.2d 1263 (App.Div. 1990), is to the contrary. We do not think so. In Small, we *565 considered the trial court's dismissal of a prisoner's personal injury complaint under the Tort Claims Act. The dismissal was based upon plaintiff's failure to file a notice of claim within ninety days of the accident and to file a complaint within two years thereof, as prescribed by N.J.S.A. 59:8-8. At the time of the plaintiff's accident, N.J.S.A. 59:5-3 precluded prisoners from commencing suits against public entities or public employees until their release from confinement and, thus, the plaintiff did not comply with the time provisions of N.J.S.A. 59:8-8. Effective in 1988, less than five months before plaintiff filed his complaint, but well beyond plaintiff's October 1986 accident, the Legislature repealed 59:5-3. In dismissing plaintiff's complaint, the trial judge rejected the argument that plaintiff's failure to comply with the notice provisions of N.J.S.A. 59:8-8 was excused by N.J.S.A. 59:5-3 which was later repealed. In effect, the trial judge applied the repeal retroactively and imposed the time requirements of 59:8-8 even though they were not effective at the time of the accrual of plaintiff's cause of action. In reversing, we concluded that plaintiff had, in any event, substantially complied with the notice provisions of N.J.S.A. 59:8-8. And although he had not filed his complaint within two years after the accident, we declined to apply the repeal retroactively to the date of his accident. In dicta, we said "when a statute restrains a right and the statute is then repealed, the right is restored as of the date the repealer statute is enacted." Id. at 448-49, 579 A.2d 1263.
We do not think Small requires the result reached by the trial judge here. First, we rejected the trial judge's retroactive application of the statutory repeal, a result consistent with our determination here. Second, we are not dealing here with a statute that merely restrained a cause of action. See Rosenberg v. North Bergen, 61 N.J. 190, 199, 293 A.2d 662 (1972). To put it another way, plaintiff's right to sue was not merely postponed by N.J.S.A. 26:11-12; rather, it was barred, as a result of which plaintiff had no cause of action at the time it might have accrued.
*566 Simply put, we see no basis for applying the repeal of N.J.S.A. 26:11-12 retroactively to create a cause of action when none existed in 1975. Imposition of liability on defendants for conduct that was immunized at the time they acted defeats both their reasonable expectations and reliance interests. See Willis v. Department of Conservation & Economic Dev., supra, 55 N.J. at 541, 264 A.2d 34. To find otherwise could expose public entities to potential liability for actions taken many years before at a time when all parties understood that immunity applied.
Reversed.
NOTES
[1] Defendants had previously moved for summary judgment under N.J.S.A. 59:6-3 which immunizes public entities and employees from "an injury resulting from the decision to perform or not to perform any act to promote the public health of the community by preventing disease or controlling the communication of disease within the community." Defendants did not seek leave to appeal the denial of their motions for summary judgment thereunder and we express no view thereon.
[2] In ruling on defendants' motions, the trial judge addressed various other issues aside from the statutory immunities. We granted leave only as to the denial of immunity under N.J.S.A. 59:6-4 and N.J.S.A. 26:11-2. We do not address any other issues.
[3] We do not view "ordinary discretion" as distinct from "good faith". Plaintiff conceded during argument before the trial judge, as well as during oral argument before us, that there are no disputes of facts to raise an issue of bad faith. There appears to be no argument, moreover, that N.J.S.A. 26:11-12 does not apply to all three defendants in their involvement in the vaccination program. Certainly it does as to defendant County Board. It is asserted that the State and Board of Education defendants were acting as agents of the County Board. Plaintiff does not appear to contend to the contrary and we, therefore, assume that to be so. In any event, N.J.S.A. 59:6-4 provides absolute immunity to all defendants.
[4] It has also been observed that the principle will not apply where "vested rights" are involved. Parsippany Hills Associates v. Rent Leveling Bd. of the Township of Parsippany-Troy Hills, supra, 194 N.J. Super. at 43, 476 A.2d 271. Such a right has been characterized as a "present fixed interest which in right reason and natural justice should be protected against arbitrary state action  an innately just and imperative right that an enlightened free society, sensitive to inherent and irrefragable individual rights, cannot deny." Pennsylvania Greyhound Lines, Inc. v. Rosenthal, 14 N.J. 372, 384-85, 102 A.2d 587 (1954).