772 A.2d 361

ROBERT CHRISTIE AND SPOTLIGHT PRODUCTIONS, INC., PLAINTIFFS, v. ROBERT J. JENEY, JR., DEFENDANT AND THIRD–PARTY PLAINTIFF–RESPONDENT, AND WALTER LUCAS, ESQ., DEFENDANT–APPELLANT, AND LAW OFFICE OF WALTER LUCAS, AND LUCAS, SAVITS AND MAROSE, LLC, DEFENDANTS, AND CHRISTOPHER PATELLA, ESQ., AND PATELLA & PLAIA, DEFENDANTS AND THIRD–PARTY DEFENDANTS.

Argued January 29, 2001—Decided May 15, 2001.

510

*Robert B. Hille* argued the cause for appellant (*Contant, Scherby & Atkins*, attorneys; *Christina A. Stoneburner*, on the letter brief).

*Meredith Kaplan Stoma* argued the cause for respondent (*Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski*, attorneys; *Elise Dinolfo*, on the brief).

The opinion of the Court was delivered by

ZAZZALI, J.

In 1995, the Legislature enacted the Affidavit of Merit statute (AMS), which provides that "[t]his act shall take effect immediately [June 29, 1995] and shall apply to causes of action which *occur* on or after the effective date of this act." *L.* 1995, *c.* 139, § 5 (emphasis added). In *Alan J. Cornblatt, P.A. v. Barow,* 153 *N.J.* 218, 708 *A.2d* 401 (1998), we rejected the contention that "occur" means that the statute applied to all actions *filed* after the effective date. In this case, we must determine whether "occur" means that the statute applies to all actions that *accrued* after the effective date. We conclude that "occur" does not mean "accrue," and that the critical inquiry is whether the actual conduct underlying the claim took place before the effective date of the AMS. Because in this case that conduct primarily occurred before the effective date, we reverse and remand.

I

Plaintiff Robert Christie retained attorney Robert Jeney to pursue three actions. According to Christie, Jeney negligently allowed the statute of limitations to run on his state-court defamation claim; failed to properly serve and plead a federal civil rights claim; and failed to answer discovery requests in a state-court contract claim. In December 1995, Christie, through his new attorney, defendant Walter Lucas, filed a three-count complaint against Jeney for legal malpractice. In May 1996, Jeney answered, denied liability, and demanded that Christie provide him with an affidavit of merit pursuant to *N.J.S.A.* 2A:53A–27. Christie, however, failed to provide Jeney with an affidavit.

In January 1997, Christie amended his complaint to add his company, Spotlight Productions, Inc., as an additional plaintiff. Jeney answered the amended complaint and again demanded an affidavit of merit. Christie again failed to submit an affidavit. In April 1997, Jeney moved to dismiss Christie's amended complaint for failure to file the affidavit. Christie, in response, submitted an affidavit of merit. The Law Division denied Jeney's motion. The

court concluded that dismissals under the AMS were to be without prejudice and that such a remedy would serve no purpose in this case.

On July 7, 1997, the Appellate Division issued its decision in *Alan J. Cornblatt, P.A. v. Barow*, 303 *N.J.Super.* 81, 696 *A.*2d 65 (App.Div.1997). Because that decision held that dismissals under the AMS were to be with prejudice, Jeney moved for reconsideration of the Law Division's order. This Court, however, stayed the Appellate Division's decision in *Cornblatt*. *Cornblatt, supra*, 153 *N.J.* at 227–28, 708 *A.*2d 401. Due to the stay, the Law Division denied the motion for reconsideration.

In March 1998, we decided *Alan J. Cornblatt, P.A. v. Barow*, 153 *N.J.* 218, 242, 708 *A.*2d 401 (1998), in which we held that dismissals under the AMS were to be with prejudice. Jeney again moved for reconsideration. In June 1998, the Law Division issued an unpublished opinion addressing the applicability of the AMS, in light of *Cornblatt's* conclusion that dismissals were to be with prejudice. The court concluded that the critical inquiry in determining the applicability of the AMS was the date of accrual of the claims. Because Christie's claims against Jeney accrued after the effective date of the AMS, the Law Division concluded that the statute applied to Christie's claims against Jeney and that Christie's failure to provide a timely affidavit of merit required dismissal of those claims with prejudice.

After that dismissal, Christie filed a second amended complaint to join Walter Lucas, Christie's attorney in the action against Jeney, as a defendant. The amended complaint alleged that Lucas negligently failed to file an affidavit of merit, leading to the dismissal of that action. By motion, Lucas challenged the June 1998 order dismissing Christie's complaint against Jeney. The Law Division denied that request. Lucas unsuccessfully sought leave to appeal from the Appellate Division. We granted leave to appeal. 165 *N.J.* 522, 760 *A.*2d 778 (2000).

## II

Enacted as part of a five-bill tort reform package, the AMS provides that "[t]his act shall take effect immediately [June 29, 1995] and shall apply to causes of action which occur on or after the effective date of this act." *L.* 1995, *c.* 139, § 5. In *Cornblatt,* the Appellate Division said of that language:

[W]e are satisfied that the statute was intended by the Legislature to apply "to causes of action which occur" in the sense of being filed subsequent to the effective date of June 29, 1995. Rather than using the phrase *causes of action which accrue* after the effective date, the Legislature used the phrase *"causes of action which occur* ... after the effective date[.]" (Emphasis added). A meaningful distinction was intended. Both the Senate Commerce Committee and the Assembly Insurance Committee which reported out the statute in bill form each referred to the bill as "establish[ing] new procedures with regard to the *filing* of certain malpractice ... actions...." [ (Emphasis added) ]. The plain intent so expressed was not that new procedures were established for malpractice actions accruing after the effective date of the statute, but rather that new procedures were established for malpractice actions filed after the effective date of the statute. The legislative use of the wording "which occur" rather than *which accrue* convincingly manifests the intent that the express language refers to the time of filing and not the time of accrual of the cause of action for malpractice.

[*Cornblatt, supra,* 303 *N.J.Super.* at 92, 696 A.2d 65 (footnotes omitted) (citing Senate Commerce Committee, Statement to Senate Bill No. S–1493 (Nov. 10, 1994), and Assembly Insurance Committee, Statement to Senate Bill No. S–1493 (June 1, 1995)).]

This Court reversed. *Cornblatt, supra,* 153 *N.J.* at 236, 708 A.2d 401. At the outset, we discussed the parties' contentions:

The controverted phrase "causes of action which occur" forms the basis of the dispute. [Barow] interprets the phrase to be synonymous with "causes of action which accrue"; under that interpretation, the statute would not apply to her case because her alleged malpractice action accrued before the statute became effective. [Cornblatt] equates the phrase to "causes of action filed"; thus, under that interpretation, the statute would apply to [Barow's] case because she filed her action after the effective date of the statute.

[*Id.* at 232, 708 A.2d 401.]

This Court rejected Cornblatt's contention that "occur" was synonymous with "filed" for several reasons. First, the Court noted that the dictionary definition of "occur" was more akin to that of "accrue," and was "completely different from that of" the word "file." *Id.* at 233, 708 A.2d 401 (defining "occur" as "[t]o happen; ... to appear; ... to take place; to arise," defining "accrue" as

"to arise, to happen, to come into force or existence," and defining "file" as "[t]o lay away and arrange in order, pleadings, motions, instruments, and other papers for preservation and reference. To deposit in the custody or among the records of a court.") (quoting *Black's Law Dictionary* 20–21, 628, 1080 (6th ed.1990)).

Second, the Court noted that in other contexts "the conjoined terms 'cause of action' and 'occur' have been considered to be synonymous with 'cause of action' and 'accrue.' " *Cornblatt, supra*, 153 *N.J.* at 233, 708 *A.*2d 401 (citing, among others, *Kemp v. State*, 286 *N.J.Super.* 549, 558, 670 *A.*2d 31 (App.Div.1996), *rev'd on other grounds*, 147 *N.J.* 294, 687 *A.*2d 715 (1997)).

Third, two of the other four bills passed in conjunction with the AMS included effective date language that specifically made those bills applicable to causes of action "filed" on or after the effective date. *Id.* at 234, 708 *A.*2d 401 (citing the Joint–and–Several Liability Bill, *L.* 1995, *c.* 140, § 3, and the Punitive Damages Act, *L.* 1995, *c.* 142, § 11). The fact that the Legislature explicitly chose to apply those acts to all claims filed after the effective date, but did not do so for the AMS, strongly undercut Cornblatt's assertion. The Court also considered additional legislative history proffered by Cornblatt, and concluded that it did not demonstrate that the Legislature intended the AMS to apply to all causes of action filed after June 29, 1995. *Id.* at 235–36, 708 *A.*2d 401.

The Court concluded:

> In sum, the meaning of the Affidavit of Merit Bill calls for its application *only to those cases the underlying legally-significant facts of which happen, arise, or take place on or after the effective date of the statute.* Because [Barow's] cause of action—the underlying facts constituting the alleged malpractice—occurred before the effective date of the statute, the statute does not apply to [Barow's] counterclaim against [Cornblatt]. Accordingly, the Appellate Division's affirmance of the dismissal of defendant's counterclaim because she did not comply with the statute is reversed.
>
> [*Id.* at 236, 708 *A.*2d 401 (emphasis added).]

### III

In this case, the Law Division held that the critical date under *Cornblatt*, the date on which the "underlying legally-significant

facts ... happen[ed], ar[o]se, or [took] place," was the same as the date of accrual. The court reasoned:

> In *Cornblatt*, the Supreme Court considered what the Legislature intended when it used the word "occur" in *L.* 1995, *c.* 139, § 5 to designate the cases that were subject to the statute. The Court expressly rejected the argument that the word "occur" is synonymous with the word "file," and that the statute is applicable to all cases filed after June 29, 1995. [*Cornblatt, supra,*] 153 *N.J.* at 235, 708 *A.*2d 401. The Court did not explicitly say that it was reaching the alternative conclusion argued in that case—that "occur" means the same as "accrue," and that the statute is applicable to all cases that accrue after June 29, 1995. *Id.* at 234–36, 708 *A.*2d 401. However, the Court relied in part on the meaning of the phrase "cause of action" to conclude that the Legislature did not intend to apply the statute to causes of action that were already in existence, although not filed, before the effective date of the statute. *Id.* at 232–33, 708 *A.*2d 401. In addition, the Court found that the word "occur" is either synonymous with or very similar to "accrue." *Id.* at 233, 708 *A.*2d 401.

Based on that reasoning, the Law Division concluded that the dates that Christie's causes of action accrued were controlling. The court continued:

> This conclusion makes sense. There is no reason for the courts to apply a different standard to application of the Affidavit of Merit statute from the familiar standard applied to statutes of limitations and the entire controversy doctrine. Indeed, this motion shows why a different application of *Cornblatt* is problematic. The trial courts would be required to make factual determinations about what proportion of the legally-significant facts occurring after the effective date of the statute is sufficient to trigger the requirement that an affidavit of merit be filed. Those kinds of determinations are likely to be applied inconsistently among the trial courts and from one case to another. *Using the accrual date of a cause of action makes the statute more predictable and practical.* The Supreme Court appears to have intended that result in *Cornblatt.*
>
> [ (Emphasis added).]

The Third Circuit, interpreting New Jersey law, reached a similar conclusion. *Chamberlain v. Giampapa,* 210 *F.*3d 154, 163 (3d Cir.2000) ("The *Cornblatt* Court found the term 'occur' as used in the statute to have the same meaning as 'accrue,' so the statute only applies to causes of action which accrue on or after June 29, 1995. A cause of action accrues when the facts occur which give rise to a right of action.") (citation omitted).

## IV

■ We are thus faced with the issue of whether the AMS applies to claims that accrue after the effective date of the statute,

June 29, 1995. *Cornblatt* concluded that "occur" did not mean "filed," but did not decide the precise issue before us. The Appellate Division recently addressed that question in *Fernandez v. Jersey City Medical Center*, 336 *N.J.Super.* 594, 765 *A.2d* 1073 (App.Div.2001). In *Fernandez*, the defendants' alleged negligence occurred before the effective date of the statute. *Id.* at 597, 765 *A.2d* 1073. The plaintiffs did not discover the negligence until sometime in 1996. *Ibid.* They filed suit within two years of their discovery, but did not file an affidavit of merit within the statutory time limits. *Ibid.* The trial court denied the defendants' motion to dismiss. *Id.* at 597–98, 765 *A.2d* 1073.

On appeal, the "defendants argue[d] that in *Cornblatt* the Court equated the 'occurrence' of a cause of action with the 'accrual' of a cause of action." *Id.* at 598, 765 *A.2d* 1073. The Appellate Division noted that *Cornblatt* did not involve a situation in which the "occurrence of the negligence and accrual of the cause of action [were] on opposite sides of June 29, 1995," and that *Cornblatt* therefore did not decide the issue. *Id.* at 599, 765 *A.2d* 1073. The panel concluded that the applicability of the AMS does not depend on "legal construct[s] such as a filing date or a statute of limitations, but rather, on the real events that formed the cause of action." *Id.* at 600, 765 *A.2d* 1073. Thus, the court held that regardless of the date of accrual, the AMS did not apply because the legally-significant facts occurred before the effective date of the AMS.

We agree with the well-reasoned opinion in *Fernandez*. The Law Division in this case incorrectly concluded that the date of accrual controls. Although *Cornblatt* rejected the contention that "occur" meant "filed," the Court did not conclude that "occur" meant "accrue." Had the Legislature intended to make the accrual date dispositive, it would have employed the term "accrual" rather than "occur." See *Cornblatt, supra,* 303 *N.J.Super.* at 92, 696 *A.2d* 65 ("Rather than using the phrase *causes of action which accrue* after the effective date, the Legislature used the phrase *'causes of action which occur* ... after the effective date[.]'

A meaningful distinction was intended."); *see also L.* 1997, *c.* 309, § 3 (enacting railroad legislation that applies "to causes of action which accrue on or after the effective date"); *L.* 1980, *c.* 104, § 15 (enacting Palisades Interstate Park Commission legislation that applies "to causes of action ... which accrue subsequent to th[e] effective date"); *L.* 1972, *c.* 45, § 59:12–3 (enacting Tort Claims Act legislation that "applies only to claims that accrue on or after [the legislation's] effective date"). Use of the word "occur" demonstrates that the Legislature intended to make the applicability of the AMS turn on the material facts and conduct underlying the cause of action, rather than on the "legal construct" of accrual. *Fernandez, supra,* 336 *N.J.Super.* at 600, 765 *A.*2d 1073; see *Ali v. Rutgers,* 166 *N.J.* 280, 286, 765 *A.*2d 714 (2000) (" 'Accrual' is a technical term found in statutes of limitation to denote the date on which the statutory clock begins to run."). We find that the Legislature did not intend "occur" to mean "accrue."

We also disagree with the trial court's conclusion that using the accrual date is preferable because otherwise courts would have to engage in a fact-sensitive analysis on a case-by-case basis to determine when the "legally-significant facts" occurred. Regardless of whether "accrual" or "legally-significant facts" is the governing standard, courts will still have to engage in a fact-sensitive analysis on a case-by-case basis. Moreover, the possible complexity of application is insufficient to override the plain language of the AMS. See 2A Norman J. Singer, *Sutherland Statutory Construction* § 45:08 (6th ed. 2000) ("[I]ntention must be determined primarily from the language of the statute itself."). The Legislature, as discussed, declined to use the word "accrue," and instead chose "occur."

V

As the Law Division recognized, "[t]he allegations of attorney malpractice almost entirely refer to conduct of Jeney before June 29, 1995." Christie retained Jeney to handle three actions: (1) a state defamation cause of action against several defendants; (2) a

federal civil rights claim against those defendants; and (3) an unrelated contract claim between Christie's company, Spotlight Productions, Inc., and a local restaurant. According to Christie's malpractice complaint, Jeney allowed the statute of limitations to run on the state-court defamation claim, failed to serve properly or plead adequately the federal civil rights claim, and failed to provide discovery in the state-court contract claim.

Jeney filed the federal civil rights complaint in December 1993. He allegedly failed to serve the complaint on one defendant, resulting in that defendant's dismissal from the case. In December 1994, the court granted a second defendant's motion for summary judgment on the ground that the complaint did not demonstrate that her actions were taken under color of state law. Jeney sought reconsideration which was denied in January 1995. The relationship between Christie and Jeney became strained in February 1995. At that time, Christie retained another attorney to appeal the dismissals of those defendants. Jeney filed a motion to withdraw as counsel in March 1995, which was denied. On June 21, 1995, Jeney filed another motion to withdraw, which was granted in July 1995. In September 1995, Christie retained defendant Lucas to handle the remainder of the federal case and to file a malpractice action against Jeney. The remaining federal defendants successfully moved for summary judgment, which was granted in November 1995.

The bulk of the "legally-significant facts" occurred, with regard to the federal claim, before the effective date of the AMS, June 29, 1995. By that date, Jeney allegedly failed to properly serve one defendant and properly plead the complaint against another defendant, resulting in the dismissal of the complaints against both parties. In fact, Jeney was relieved as counsel less than one month after the effective date of the AMS. Therefore, the "legally-significant facts" primarily occurred before the effective date of the AMS, and accordingly the malpractice claim arising out of the federal case is not subject to the statute.

■ In the state-court contract action, Jeney filed a complaint in October 1993. In the spring of 1994, counsel for the defendant in that action moved to dismiss the case for failure to answer interrogatories. In June 1994 that motion was granted, dismissing Christie's complaint without prejudice. Jeney moved to reinstate the complaint within a few weeks, and the court granted that motion. Christie met with a new attorney, Patella, to discuss the case. At the behest of Patella, Jeney forwarded the file to him in February 1995. Shortly thereafter, the defendant in that action moved to dismiss the complaint without prejudice, again for failure to comply with discovery requests. That motion was granted in March 1995. In late June or early July 1995, the defendant moved to dismiss the complaint with prejudice. The defendant sent the motion papers to Jeney; he responded by letter dated July 13, 1995, that he had not represented Christie since early 1995 and that he believed Patella had undertaken that representation. The defendant's attorney informed Jeney by letter dated July 20, 1995, that he was still listed as counsel of record. An attorney from Jeney's office appeared on Christie's behalf at the August 1995 hearing on the motion to dismiss. That motion was granted on the same day.

The "legally-significant facts" with regard to that claim consist of the conduct allegedly resulting in two dismissals without prejudice before the effective date of the AMS and a third dismissal with prejudice just over one month after that date. The bulk of those facts occurred prior to June 29, 1995. Therefore, the AMS also does not apply to that claim.

■ On the state-court defamation action, the allegedly actionable statements had been made by the end of March 1992. Jeney allegedly failed to file a complaint within the one-year statute of limitations. *N.J.S.A.* 2A:14–3. Thus, Jeney's nonfeasance occurred long before June 29, 1995, and the AMS does not apply to that claim as well.

## VI

In summary, the applicability of the AMS turns on when the legally-significant conduct underlying the claim took place, rather than on the "legal construct" of accrual. Had the Legislature intended the applicability of the statute to turn on accrual, the statute would have used the term "accrue" rather than "occur." Our conclusion was implicit in *Cornblatt,* and is in accord with the language of the AMS. As the Law Division recognized, "[a]lmost all" of Jeney's allegedly negligent conduct, that is, the "legally-significant facts," took place before the effective date of the AMS. Therefore, the AMS does not apply to Christie's claims against Jeney.

Reversed and remanded for further proceedings consistent with this opinion.

*For reversal and remandment*—Chief Justice PORITZ and Justices STEIN, COLEMAN, LONG, LaVECCHIA and ZAZZALI—6.

*Opposed*—None.