ARCHIBALD S. ALEXANDER, TREASURER OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. NEW JERSEY POWER & LIGHT COMPANY, A BODY COR-PORATE, DEFENDANT-APPELLANT.

Argued March 12 and 21, 1956—Decided April 23, 1956.

*Mr. Joseph F. Autenrieth* argued the cause for appellant (*Messrs. Autenrieth & Rochester,* attorneys).

*Mr. Harold Kolovsky,* Assistant Attorney-General, argued the cause for respondent (*Mr. Grover C. Richman, Jr.,* Attorney-General, and *Mr. Lawrence E. Stern,* Deputy Attorney-General, on the brief).

The opinion of the court was delivered by

HEHER, J. On June 3, 1953 the defendant public utility, New Jersey Power & Light Company, classified as such by *R. S.* 48:2–13, instituted a proceeding before the Board of Public Utility Commissioners for authority to increase the rates chargeable for its products supplied and services rendered within the State of New Jersey; and thereupon, pursuant to *L.* 1951, *First Special Session, c. 357, p. 1474, section 1, N. J. S. A.* 48:2–31.1, effective December 5, 1951, the Attorney-General employed Joseph Harrison and Wesley L. Lance, members of the New Jersey Bar, as rate counsel

to "protect the public interest in such proceeding." And now the question for decision is whether the cost of the services of the rate counsel rendered in judicial proceedings initiated by the Utility's appeal to the Appellate Division of the Superior Court from the Board's dismissal of the petition for the rate increase is assessable against the Utility under the provision of the cited statute, *N. J. S. A.* 48:2–31.1, that the Utility "shall pay to the State, in the manner" therein provided, "the reasonable compensation and expenses of such legal counsel * * *," provided that the "total amount which the Utility may be required to pay" "with respect to such proceeding" shall not exceed 1/10 of 1% of the revenues derived during the last preceding calendar year from its intrastate sales of its product supplied or intrastate service rendered, the rates, tolls, fares, or charges for which are the "subject matter of such proceeding"; and that such payments shall be "deemed to be operating expenses" of the Utility.

The Utility's appeal to the Appellate Division was certified here for decision on the motion of the Attorney-General; and the Board's order of dismissal was affirmed. *In re New Jersey Power & Light Co.*, 15 *N. J.* 82 (1954). The Utility sought a surcharge of 5% on newly established rates to recoup a past deficiency in gross revenue. The rate counsel defended the Board's order in the judicial proceedings; Mr. Harrison made the oral argument; Mr. Lance and the Attorney-General joined in the brief and the oral presentation.

The Utility paid a charge of $6,601.50 made by the State for the services of the rate counsel in the proceeding before the Board; the controversy here concerns an additional charge of $3,600 for their services on the judicial review, and $83.52 for incidental expenses. Payment was refused on the asserted ground that the statute cited *supra* has reference to the services of rate counsel in the proceeding before the Board alone, and not on the judicial review of the Board's action. The State Treasurer brought this action in the Law Division of the Superior Court for a declaratory judgment. The late Judge Smalley awarded a summary

judgment to the plaintiff. He read the statute, *N. J. S. A.* 48:2–31.1 and 48:2–31.2, as placing the controverted obligation on the Utility.

The Utility argues for a strict construction of the statute, *N. J. S. A.* 48:2–31.1, as one ordaining an "obligation not recognized by common law." The act authorizes the Attorney-General to employ, "on a temporary basis," "such legal counsel, experts and assistants as in his judgment may be necessary to protect the public interest in such proceeding"; and it is urged that the words "in such proceeding," related to the context, signify the proceeding before the Board merely, for the "employment of 'experts and assistants'" would be "pertinent" to that proceeding only and "would not be required for judicial proceedings on review," since the "proceedings before the Board are separate and distinct from judicial proceedings." Invoking the basic doctrine that rate-making is "a legislative and not a judicial function," *Atlantic City Sewerage Co. v. Board of Public Utility Commissioners,* 128 *N. J. L.* 359 (*Sup. Ct.* 1942); *Public Service Coordinated Transport v. State,* 5 *N. J.* 196 (1950), it is said that we must "assume" that the "power to appoint 'legal counsel, experts and assistants'" in a "proceeding that is the exercise of a legislative function is not extended to proceedings which are solely judicial," and had the Legislature intended the broader coverage "clear language to that effect would have been used." Reference is made to the repeated use of the term "such proceeding" throughout the statute, all relating, it is insisted, "solely to a proceeding defined in Section 1 of the statute." And to the same end, it is contended that the act is a tax measure and is not to be extended beyond the clear import of the language used to express the legislative intention, citing *Harper v. New Jersey Mfrs. Cas. Ins. Co.,* 1 *N. J.* 93 (1948); *Public Service Coordinated Transport v. State Board of Tax Appeals,* 115 *N. J. L.* 97 (*Sup. Ct.* 1935).

Recourse is also had to the provision, *N. J. S. A.* 48:2–31.2(*a*), for the submission at the "conclusion of any such proceeding, or, in the discretion of the Attorney-General,

from time to time during the progress thereof," of an "itemized statement," "as of the date of such statement," of the compensation and expenses of the counsel, experts and assistants so employed by the Attorney-General, and the further provision, *N. J. S. A.* 48:2–31.2(*b*), for a review by the Board, at the instance of the Utility, of the "reasonableness of the amount of any item or portion thereof set forth in any such statement," the determination thus made to be "subject to review in the same manner as any final decision or action of any State administrative agency." And it is suggested that the Board would not have jurisdiction "to determine the reasonableness of legal fees for services on appeal in another jurisdiction."

The statute is to receive a reasonable construction, to serve the apparent legislative purpose. The inquiry in the final analysis is the true intention of the law; and, in the quest for the intention, the letter gives way to the rationale of the expression. The words used may be expanded or limited according to the manifest reason and obvious purpose of the law. The spirit of the legislative direction prevails over the literal sense of the terms. The particular words are to be made responsive to the essential principle of the law. When the reason of the regulation is general, though the provision is special, it has a general acceptation. The language is not to be given a rigid interpretation when it is apparent that such meaning was not intended. The rule of strict construction cannot be allowed to defeat the evident legislative design. The will of the lawgiver is to be found, not by a mechanical use of particular words and phrases, according to their actual denotation, but by the exercise of reason and judgment in assessing the expression as a composite whole. The indubitable reason of the legislative terms in the aggregate is not to be sacrificed to scholastic strictness of definition or concept. *Wright v. Vogt*, 7 *N. J.* 1 (1951). It is not the meaning of isolated words, but the internal sense of the law, the spirit of the correlated symbols of expression, that we seek in the exposition of a statute. The intention emerges from the principle and

policy of the act rather than the literal sense of particular terms, standing alone. *Caputo v. Best Boods, Inc.*, 17 *N. J.* 259 (1955).

The object of this enactment was the protection of the public interest in a rate-increase proceeding begun by a public utility of the given class, by the employment of legal counsel qualified for service in a field that calls for experienced judgment, aided by expert and specialized assistance, all at the immediate cost of the Utility, although in the end the expense influences the rate and thus falls upon the consumer; and it would be contrary to all reason, when the policy is considered, to read the act as terminating the services of the rate counsel the moment the Board determines the issue and thereby to exclude the same public representation on a judicial review of the Board's action, or to place the burden of the continued or substitute public representation upon the general public. It goes without saying that in this case, for example, the rate counsel who defended the proceeding before the Board, as the representatives of the public selected for the particular work, had every claim to such continued representation on the judicial review; and there is nothing to suggest that the cost of the extended service should come from the public treasury. This was, by every reasonable standard, the legislative concept; there is no ground for supposing the purpose is unexpressed; it is there by clear intendment; it is intrinsic in the statutory policy itself. A statute often speaks as plainly by inference, and by means of the purpose which underlies it, as in any other manner. That which is clearly implied is as much a part of the law as that which is expressed. *Brandon v. Montclair*, 124 *N. J. L.* 135 (*Sup. Ct.* 1940), affirmed 125 *N. J. L.* 367 (*E. & A.* 1940). The statutory "proceeding" did not come to an end until the last judicial review was had. The Legislature quite evidently had in view a rate "proceeding" that in its very nature was subject to judicial examination, and so the continuance of the public representation until the end, at the expense of the Utility. To read the act otherwise would suggest a *casus omissus*. The pro-

vision for a review by the Board of the reasonableness of the charges for such services submitted by the Attorney-General has no contrary significance. That is a purely administrative regulation not concerned with the basic policy of the law.

Under the common law of England, the Attorney-General was the chief law officer and adviser of the Crown upon whom devolved the management of its legal affairs and the prosecution of all suits, civil and criminal, in which the crown had an interest; and these functions and responsibilities, in the absence of constitutional limitations, appertain to the office of Attorney-General in New Jersey, as a part of our common-law inheritance, subject to enlargement or abridgement by the legislative authority. *Wilentz v. Hendrickson,* 133 *N. J. Eq.* 447 (*Ch.* 1943), Jayne, V. C., affirmed 135 *N. J. Eq.* 244 (*E. & A.* 1944). In equity, as at law, the Attorney-General has the right, save as provided otherwise by the lawmaker, to intervene by suit for the protection of the property of the sovereign or the interests of the public, where such are directly involved. *Attorney-General v. Delaware & Bound Brook Railroad Co.,* 27 *N. J. Eq.* 631 (*E. & A.* 1876), Dixon, J.; *Wilson v. State Water Supply Commission,* 84 *N. J. Eq.* 150 (*E. & A.* 1915), Garrison, J.; *Board of Public Utility Commissioners v. Lehigh Valley R. R. Co.,* 106 *N. J. L.* 411 (*E. & A.* 1930), Parker, J. See also *Passaic National Bank & Trust Co. v. East Ridgelawn Cemetery,* 137 *N. J. Eq.* 603 (*E. & A.* 1946); *Darling Apartment Co. v. Springer,* 25 *Del. Ch.* 420, 22 *A. 2d* 397 (*Sup. Ct.* 1941), 137 *A. L. R.* 803; *Attorney-General v. Williams,* 174 *Mass.* 476, 55 *N. E.* 77, 47 *L. R. A.* 314 (*Sup. Jud. Ct.* 1899).

The Board is authorized, *R. S.* 48:2–2, to appoint counsel, and to fix the compensation of all of its officers and employees, save where otherwise provided by statute. In *Public Utility Commissioners v. Lehigh Valley R. R. Co.,* cited *supra,* the Public Utilities Act was read, in conjunction with this authority to employ counsel, as delegating the "state's power over public utilities to this great state agency, intrusting

to it the power and imposing on it the responsibility of taking action in the courts to defend its mandates against legal attack, and to enforce them by appropriate proceedings indicated in section 33" of the original Public Utilities Act of 1911, as amended, *L.* 1911, *c.* 195, *R. S.* 1937, 48:2–41, 48:2–42, and also, "by plain implication," if not indeed expressly, entrusting "to the counsel of the board the power of conducting all suits on its behalf   *   *   *," and thus denying to the Attorney-General representation and control of litigation in this field, even though the suit there was to recover a penalty in the name of the State, for noncompliance with an order of the Board.   See section 37 of the Act of 1911; also section 38; *R. S.* 1937, 48:2–43.   For the powers and functions of the Attorney-General at that time, see *R. S.* 1937, 52:17–2.

But a legislative reorganization of the State's department of law came later on.   *L.* 1944, *c.* 20; *N. J. S. A.* 52:17A–1, *et seq.   N. J. S. A.* 52:17A–4 declares the "powers and duties" of the newly established "Division of Law" to be those "now or hereafter conferred upon or required of the Attorney-General, either by the Constitution or by the common and statutory law of the State, and as specifically but not exclusively as detailed" therein; these among others:  to (e) "Act as the sole legal adviser, attorney or counsel, notwithstanding the provisions of any other law, for all officers, departments, boards, bodies, commissions and instrumentalities of the State Government in all matters other than those requiring the performance of administrative functions entailing the enforcement, prosecution and hearing of issues as imposed by law upon them; and represent them in all proceedings or actions of any kind which may be brought for or against them in any court of this State; and shall likewise interpret all statutes and legal documents, inspect and approve contracts and titles and otherwise control their legal activities;" (g) "Attend generally to all legal matters in which the State or any officer, department, board, body, commission or instrumentality of the State Government is a party or in which its rights or interests are involved;"

(h) "Enforce the provisions of the constitution and all other laws of the State, as well as perform all of the duties conferred and imposed by law upon the Attorney-General."

We have no occasion here to consider the full force and effect of the Act of 1944 on pre-existing law. It suffices to say that the later Act of 1951, *N. J. S. A.* 48:2–31.1, now under examination, authorized the employment of rate counsel by the Attorney-General to "protect the public interest" in a proceeding such as this, at the expense of the Utility, a continuing public representation until the termination of the judicial review which of necessity is a component part of the proceeding should the reviewing process be invoked by an aggrieved party. This would seem to be inseparable from the animating principle of the statutory policy—the indisputable rationale of the legislative rule. The construction *contra* would be arbitrary and illusive.

Certainly, it was not within legislative contemplation that public representation in the judicial proceeding be had by the Board's own counsel, especially where the rate counsel deemed the action under review to be contrary to the public interest, in whole or in part. Such a course would not comport with the reason and purpose of the statute, which makes other provision for disinterested public representation. And see *N. J. S. A.* 52:17A–11, providing that no officer, department, board, body, commission or instrumentality of the State Government "shall employ any person to act as attorney, counsel, solicitor, legal assistant or other legal adviser" to such agencies, nor "employ any person in any legal capacity for the purpose of giving legal advice or rendering legal services," but "may employ an attorney-at-law under full-time employment solely in the performance of administrative functions entailing the hearing of issues and determining facts in order that the said officer, department, board, body, commission or instrumentality may perform his or its functions as required by law," provided that "No such attorney shall act in a legal capacity in the prosecution of any charge or complaint before" such officer or agency of government. See also *N. J. S. A.* 52:17A–13, providing that no "special

counsel" shall be employed for the State or for or by any such officer or agency of the State Government "except by authority of the Attorney-General, and then only with the approval of the Governor, and provided that appropriations have been made therefor, unless the matter" be emergent and be so declared by the Governor. And see *N. J. S. A.* 52:17*A*–17.

Affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING and BRENNAN—6.

*For reversal*—None.