In re Yeutseun CHEN, Debtor.

**STATE OF NEW JERSEY,
Plaintiff/Appellant,**

v.

**Yeutseun CHEN, Defendant/Appellee.**

Civ.A. No. 98–1783(SMO).
Bankruptcy No. 96–19633(JHW).
Adversary No. 97–1049(JHW).

United States District Court,
D. New Jersey.

Dec. 18, 1998.

Peter Verniero, Attorney General of New Jersey, Marc Krefetz, Deputy Attorney General, Department of Law and Public Safety, Law Division, Trenton, NJ, for State of New Jersey.

Trinna L. Rodgers, Cape–Atlantic Legal Services, Atlantic City, NJ, for Yeutseun Chen.

## OPINION

ORLOFSKY, District Judge.

Plaintiff/Appellant, the State of New Jersey ("New Jersey" or the "State"), has filed an appeal from the decision of United States Bankruptcy Court Judge, Judith H. Wizmur, denying the State's motion for reconsideration.[1] For the first time on appeal, New Jersey argues that its Eleventh Amendment sovereign immunity bars the United States Bankruptcy Court from exercising jurisdiction over the State to discharge the debt owed to it by the Debtor, Yeutseun Chen. This argument presents this Court with a novel and difficult issue for resolution, that is, does a state waive its Eleventh Amendment sovereign immunity by filing an adversary complaint in the Bankruptcy Court and then litigating the merits of its claim. For the reasons set forth below, I conclude that the State has waived its Eleventh Amendment immunity.

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a),[2] which

---

1. New Jersey does not appeal from the original decision because it failed to do so within the time allotted for such an appeal. *See* Transcript of Hearing Before Judge Wizmur, on Dec. 8, 1997, at 6 (noting that "if you wanted to appeal the original order, you had your chance"); Brief of Appellant, the State of New Jersey, filed May 11, 1998, at 6 ("The issues on appeal are limited to the denial of the motion for reconsideration, since no appeal was taken from the order for judgment.").

2. Section 158(a) provides:

The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and with leave of the court from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judge under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

confers appellate jurisdiction on District Courts to hear appeals from decisions of Bankruptcy Judges. This Court sits as an appellate Court, reviewing the determinations of the Bankruptcy Court *de novo* on issues of law, and for clear error as to its factual findings. *See In re Trans World Airlines, Inc.*, 145 F.3d 124, 130 (3d Cir.1998) (" 'In reviewing the bankruptcy court's determinations, we exercise the same standard of review as the district court,' *Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc.*, 57 F.3d 1215, 1223 (3d Cir.1995), that is, we review the bankruptcy court's legal determinations de novo, its factual findings for clear error and its exercise of discretion for abuse thereof."); *Family Kingdom, Inc. v. EMIF New Jersey Ltd. Partnership (In re Family Kingdom, Inc.)*, 225 B.R. 65, 69 (D.N.J. 1998) (Orlofsky, J.). This case, however, involves only issues of law.

New Jersey filed its adversary complaint in the Bankruptcy Court on February 19, 1997, claiming that Debtor/Defendant/Appellee, Yeutseun Chen ("Chen"), owed New Jersey $4,537.50 for unemployment compensation that he fraudulently received while he was still employed. New Jersey had previously obtained a judgment in the state court, which found that Chen had "ma[d]e[ ] a false statement or representation, knowing it to be false, or knowingly fail[ed] to disclose a material fact, to obtain" his unemployment insurance payments. *See* N.J. Stat. Ann. § 43:21–16. After New Jersey obtained a judgment in its favor from the New Jersey Superior Court in the amount of $4,537.50 for Chen's violation of N.J. Stat. Ann. § 43:21–16, Chen paid the State $919.00, and then declared bankruptcy on December 16, 1996. New Jersey filed an adversary complaint in the Bankruptcy Court to prevent the discharge of its judgment lien.

In the Bankruptcy Court, the State argued that, pursuant to 11 U.S.C. § 523(a)(2)(A),[3]

the debt was not dischargeable, because it resulted from the commission of fraudulent acts. The State further contended that since it had previously obtained a judgment in state court, which found that Chen had committed fraud, the Bankruptcy Court was precluded from finding otherwise. Therefore, according to the State, the Bankruptcy Court, as a matter of law, was required to apply collateral estoppel and find the debt nondischargeable, under § 523(a)(2)(A). Judge Wizmur, however, concluded that the state court judgment did not have preclusive effect on the issue of dischargeability, because N.J. Stat. Ann. § 43:21–16 did not require the court to find an intent to deceive, whereas § 523(a)(2)(A) of the Bankruptcy Code did impose such a requirement. As a result, Judge Wizmur conducted an evidentiary hearing and found that the State could not prove by a preponderance of the evidence that Chen had acted with the requisite intent to deceive when he obtained unemployment insurance while employed. Based on this finding, Judge Wizmur entered judgment in favor of Chen in the adversary proceeding discharging the debt Chen owed to the State.

New Jersey filed a motion for reconsideration, arguing that the Appellate Division's decision in *Malady v. Board of Review*, 166 N.J.Super. 523, 529, 400 A.2d 119 (N.J.Super.A.D.1979) held that § 43:21–16 requires proof of the same intent to deceive as is required by § 523(a)(2)(A).[4] Judge Wizmur denied the motion on the ground that the one sentence in *Malady* about intent was mere dicta. *See* Transcript of Hearing Before Judge Wizmur, on Dec. 8, 1997, at 2.

New Jersey then appealed the denial of its motion for reconsideration, arguing, for the first time on appeal, that the Bankruptcy Court did not have jurisdiction to hear the adversary proceeding, because New Jersey had not waived its Eleventh Amendment sov-

---

3. Section 523(a)(2)(A) provides that the Bankruptcy Court cannot "discharge an individual debtor from any debt ... for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretense, a false representation, or actual fraud." To conclude that a debt is nondischargeable under § 523(a)(2)(A), a court must find that the debtor made the false statement with the intent to de-

ceive the creditor. *See In re McMillan*, 579 F.2d 289 (3d Cir.1978).

4. In *Malady*, the Appellate Division held that "[w]hile [§ 43:21–16] requires a culpable *Mens rea* as a condition to the imposition of the penalties authorized, it is primarily civil in nature." *Malady*, 166 N.J.Super. at 529, 400 A.2d 119.

ereign immunity. In response, Chen argued that New Jersey had consented to suit by filing the adversary complaint in the Bankruptcy Court, and, thus, the Eleventh Amendment did not apply since New Jersey had initiated the proceedings.

For the reasons set forth below, I find that New Jersey voluntarily entered a general appearance in the United States Bankruptcy Court, and, therefore, has waived its sovereign immunity under the Eleventh Amendment. I also find that Judge Wizmur correctly determined that § 43:21–16 does not require proof of an intent to deceive and, therefore, the state proceedings cannot have preclusive effect in this case. Accordingly, I will affirm the decision of the Bankruptcy Court denying the State's motion for reconsideration.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In October, 1990, Chen lost his job at Bally's Park Place Hotel and Casino, in Atlantic City, New Jersey. *See* Transcript of Trial Before Judge Wizmur, on October 23, 1997 ("10/23/97 Tr."), at 31 (testimony of Chen). Shortly thereafter, Chen obtained a part-time job at Resorts International, another casino located in Atlantic City. *See id.*

In November of 1990, Chen applied for "part-time [unemployment] benefits," *see id.* at 31–32, since he had only part-time employment. Chen needed assistance in filling out the application for unemployment benefits, because the form was printed in English and Chen, who is Chinese and knows very little English, was unable to read it. *See id.* at 40. Chen received help from a friend with whom Chen had worked. *See id.* at 40–41. Even with this help, Chen failed to respond to one of the questions on the application, the one which asked if he was working part-time. *See id.* at 19. A claims agent also reviewed the form to ensure that "all information requested [was] provided," *id.* at 20 (testimony of John C. Galvin, a supervising investigator with the Bureau of Benefit Payment Control for the Department of Labor), but did not notice that this question remained unanswered. Chen claims that he did not provide an answer to this question, because "[a]t the time [he] was applying for part-time benefits so [he] thought [he did]n't have to fill out that line, the questions." *Id.* at 33 (testimony of Chen). As a result, Chen received unemployment compensation, despite the fact that he had a part-time job.

In the summer of 1992, the New Jersey Department of Labor (the "Department") conducted its regular, "quarterly cross match that by computer ... checks the wages reported by New Jersey employers and the benefits paid on unemployment insurance claims by social security number." Transcript of Trial Before Judge Wizmur, on Aug. 5, 1997 ("8/5/97 Tr."), at 7 (testimony of Priscilla Carrano, supervisor of investigations with the New Jersey Department of Labor, Unemployment Insurance Division). "[T]his particular cross match ... indicated that Mr. Chen was employed at Resorts International Hotel/Casino during the period when he was collecting full unemployment benefits." *Id.* A further investigation of "the payroll information from Resorts International ... supported a finding that he was employed during the time he received benefits." *Id.* As a result, the Department "sent Mr. Chen a letter dated August 11th, 1992, advising him of the findings of the investigation and requesting that he report for a" hearing to determine "whether he had to pay back any benefits." *Id.* at 7–8. The letter informed Chen that this hearing was scheduled for August 18, 1992, only one week after the letter had been sent. *See id.* at 8.

Chen did not appear at the hearing on August 18, 1992. *Id.* Consequently, the Director of Unemployment Insurance, on behalf of the Department, "issued [its] determination and demand for the refund of the unemployment benefits." *Id.* The Department made this determination on March 16, 1993, without any additional investigation, and concluded that Chen "was not entitled to the benefits that had been paid for the weeks of December 22nd, 1990 through June 29th, 1991, [and] that he had been overpaid $3,630." *Id.* Further, the Department decided that Chen had committed "fraud and that he was being fined $907.50 and disqualified from unemployment benefits for one year." *Id.* The Department made its find-

ing of fraud "based on the fact that no earnings were reported by Mr. Chen and every two weeks Mr. Chen had to file a mail certification for benefits," which asked if he had worked. *Id.* at 9.

Chen appealed this determination. *See id.* at 10–11. On April 16, 1993, Chen appeared before the Appeal Tribunal, specifically, Hearing Examiner, Michael Capaccio, who reviewed the decision of the Director of Unemployment Insurance and took testimony from Chen. *See id.* at 11. Chen was not represented by counsel at the hearing. *See id.* at 12. The Appeal Tribunal affirmed the determination of the Director of Unemployment Insurance and held "Mr. Chen liable to refund the benefits paid and the fine and penalty that ... had [been] imposed." *Id.* "Mr. Chen [then] appealed to the board of review." *Id.* at 13. On June 22, 1993, the Board of Review remanded the case "to the [A]ppeal [T]ribunal for a new decision."[5] *Id.* On November 1, 1993, the Appeal Tribunal once again affirmed the decision of the Director of Insurance. *See id.* at 15. For a second time, Chen appealed the decision of the Appeal Tribunal to the Board of Review, which "issued a decision[, on February 3, 1994,] reviewing the matter on the record and affirming the decision of the [A]ppeal [T]ribunal." *Id.* Chen appealed this decision to the New Jersey Superior Court, Appellate Division, which dismissed the appeal, on November 2, 1994, for failure to file a timely brief.[6] *See id.* at 17.

Thereafter, on December 16, 1996, Chen filed a Chapter 7 petition in the Bankruptcy Court. *See* Petition, No. 96–19633, filed Dec. 16, 1996. On February 19, 1997, the State of New Jersey filed an adversary complaint in the Bankruptcy Court, seeking a declaration that Chen's debt owed to the State was not dischargeable as a debt that allegedly resulted from the commission of fraud. *See* Complaint to Determine Dischargeability, No. 97–1049, filed Feb. 19, 1997. New Jersey argued that the determination by the State

Court that Chen had committed fraud should have preclusive effect in the adversary proceeding and, as a result, that Judge Wizmur should find the debt to be nondischargeable. *See* 8/5/97 Tr. at 22–23; *see also* Trial Brief on Behalf of the State of New Jersey, dated July 2, 1997, at 4 ("The State's fraud claim, which has successfully been reduced to judgment, is nondischargeable in bankruptcy under collateral estoppel.").

In response, Chen claimed that he did not receive a fair and full opportunity to litigate the issue of whether he committed fraud "due to the lack of an interpreter," and that he lacked the intent to deceive since he did not understand the application form. Answer, filed Mar. 31, 1997, ¶¶ 12, 16. Based on these claims, Chen argued that the finding of fraud in the state court should not have preclusive effect in the Bankruptcy Court.

Judge Wizmur held a two-day trial on August 5, 1996, and October 23, 1996. During the first day of trial, she heard the testimony of Priscilla Carrano, supervisor of investigation with the New Jersey Department of Labor, Unemployment Insurance Division. *See* 8/5/97 Tr. at 6–18. Carrano recounted the steps taken by the Department to determine that Chen had fraudulently obtained unemployment benefits. *See id.* Carrano testified that the State had a tape in its "archives in [a] warehouse in Trenton" of the April 13, 1993, hearing before the Appeal Tribunal. *Id.* at 18. At the conclusion of Carrano's testimony, Judge Wizmur asked the State to submit a transcript of this tape "to create a full record of what happened below" so that she could determine "whether this case should be resolved on the collateral estoppel issue." *Id.* at 25, 27.

During the second day of trial, on October 23, 1996, Judge Wizmur announced her decision from the bench, based on a review of the transcripts from the Appeal Tribunal hearing of April 13, 1993, and from the first day of

---

**5.** The basis for this remand is not clear from the record before the Court.

**6.** Although the Appellate Division of the Superior Court did not reach the merits of the case, its dismissal of the appeal represents a final decision, from which Chen never appealed. Thus,

the Appellate Division has adopted the conclusion of the Board of Review. *See* 10/23/97 Tr. at 6–7 (noting that "[t]he State Court administrative adjudication was final and the dismissal of the appeal doesn't alter the finality aspect of this").

trial. She determined that "[t]here is no question regarding the finality of the State Court decisions." 10/23/97 Tr. at 7. She also held "that issue preclusion would preclude litigation of issues [in the Bankruptcy Court that had been] adjudicated in State Court." *Id.*

Judge Wizmur concluded, however, that the State Court did not consider the same issues as those necessary to make a determination of dischargeability. *See id.* at 9–11. Specifically, Judge Wizmur found that the State Court had determined that Chen had violated N.J. Stat. Ann. § 43:21–16, which imposes civil penalties upon: "Whoever makes a false statement or representation knowing it to be false or knowingly fails to disclose a material fact to obtain or increase or attempts to attain or increase any benefit or other payment under this chapter or under an employment security law of any other state . . ." *Id.* at 9 (quoting N.J. Stat. Ann. § 43:21–16).

In contrast, to determine the dischargeability of the debt under 11 U.S.C. § 523(a)(2)(A), Judge Wizmur noted that she must find that the debtor had the intent to deceive. *Id.* at 10. Thus, the State Court was only required to find that Chen had made a knowing misrepresentation to conclude that Chen had violated N.J. Stat. Ann. § 43:21–16, whereas Judge Wizmur had to find that Chen made such a knowing misrepresentation with the intent to deceive, to conclude that the debt is not dischargeable under 11 U.S.C. § 523(a)(2)(A). Judge Wizmur "scoured" the record of the state proceedings and concluded that there was no indication that any one of the adjudicative bodies that considered the case "looked at this issue of intent to deceive." *Id.* at 11. Judge Wizmur also held that an "intent to deceive" could not be implied from a knowing misrepresentation, because the misrepresentation could result from "a mistaken belief of the need to designate, for instance, part-time work rather than full-time work." *Id.* at 10. Based on her finding that the state proceedings had not considered the issue of an intent to deceive, Judge Wizmur requested that the State present evidence to prove that Chen had acted with such an intent.

On behalf of the State, Deputy Attorney General, Marc Krefetz, Esq., presented the testimony of John C. Galvin, a supervising investigator with the Bureau of Benefit Payment Control for the Department of Labor. *See id.* at 14. Galvin testified about the information that an applicant receives when completing his or her application for unemployment benefits. In particular, Galvin testified that each applicant receives a booklet "that's handed out at the unemployment offices explaining rights and responsibilities regarding claiming unemployment benefits." *Id.* at 15. Galvin read the following statement directly from the booklet: "If you are working part-time due to your employer's lack of full-time work, you may still be able to collect all or part of your unemployment benefits." *Id.* at 16 (quoting "Your Rights and Responsibilities" at 12). Galvin also testified that all applicants must either view a film regarding their rights and responsibilities or sign a written waiver. *Id.* at 18, 23. Galvin testified that the film is in English and it "explains many things, such as part-time work, full-time work, ineligiblities regarding any number of issues such as being sick or ill or out of state." *Id.* Applicants have the opportunity to ask questions after they view the film. *See id.* at 24. Finally, Galvin testified about the certification that Chen was required to submit every two weeks in order to continue receiving his benefits. *See id.* at 27. Judge Wizmur read the following excerpt from the certification form into the record:

> [Section] B says, complete this section only if you worked or received holiday or vacation pay during the weeks claimed. If you are claiming partial benefits mail proof of your earning signed by your employer along with this form. One, did you return to work full-time or part-time? If full-time, enter the dates you returned to work. Two, enter the amount of gross wages you earned, including holiday or vacation pay. Three, are you still working? And then there is a space for your present employer.

*Id.* at 27–28.

In response, Trinna Rodgers, Esq., counsel for Mr. Chen, called him to the witness

stand. Chen testified about his own experience in applying for benefits. Chen testified that he was unable to read the application form at the time that he completed it. *See id.* at 41. He testified that he speaks "a minimum English ... but about writing and readings an almost minimum to nothing." *Id.* at 45. Chen testified that he could complete the form only with the aid of a Chinese man, who Chen "trusted because [the man] ha[d] applied like this kind of form before." *Id.* at 42.

Chen also testified that he told the unemployment insurance claims agent that he was applying "for the part-time," *id.* at 34, 41, and that the claims agent asked him "to prove that I was part-time." *Id.* at 46. To comply with this demand, Chen provided the claims agent with his "paycheck stub and all this," which the claims agent "took ... back there and copied." *Id.*

Finally, Chen's attorney asked him if he ever intended "to defraud the State of New Jersey of money," *id.* at 48, to which Chen replied: "Honest to God, I talk to God and myself that I never intended to cheat the government because I don't even know how to cheat the government. And the government forms are so complicated. You tell me to cheat them, I don't even know how." *Id.* at 49.

After considering the testimony of Galvin and Chen, Judge Wizmur found that Chen did not have the requisite intent to deceive. Specifically, she found that:

> We understand now that Mr. Chen's comprehension of English and the written language was extremely limited, that he had help in preparing the application back in 1990, that he also had help in preparing the first certification that he submitted and was told to repeat those answers in subsequent certifications.
>
> Clearly—most likely those forms were submitted falsely. They did not represent the correct information that should have been submitted. Mr. Chen would not be able to escape liability for erroneous payment made by the State on the basis of inability to understand requirements. But when we take up the issue of intent to deceive we don't have the State fulfilling its requirement of establishing by a preponderance of the evidence that there was intent to deceive on Mr. Chen's part.
>
> I will accept the scenario that Mr. Chen, while he did falsely submit these certifications failing to reflect part-time employment and while he would otherwise be responsible to the State for repaying benefits to which he was not entitled, [he] did not intend to deceive, [and] did not understand the requirements and therefore [his debt to the State] can be discharged of the obligation to repay.

*Id.* at 49–50. Accordingly, Judge Wizmur entered a judgment in favor of Chen in the adversary proceeding and denied the State's application for a determination of nondischargeability of the debt owed by Chen to the State. *See* Order of November 5, 1997.

New Jersey filed a motion for reconsideration on November 3, 1997, arguing that Judge Wizmur incorrectly concluded that the State Court was not required to find an intent to deceive to conclude that Chen had violated N.J. Stat. Ann. § 43:21–16. The State relied upon a New Jersey Superior Court, Appellate Division, decision, in which that court held that a violation of § 43:21–16 "requires a culpable *Mens rea* as a condition to the imposition of the penalties authorized." *Malady v. Board of Review,* 166 N.J.Super. 523, 529, 400 A.2d 119 (N.J.Super.A.D.1979). In *Malady,* the Appellate Division reviewed the proper procedures for the imposition of a monetary penalty under § 43:21–16. *See id.* at 528, 400 A.2d 119. Other than the one sentence quoted above, the Appellate Division's decision in *Malady* makes no other mention of the issue of intent. Nevertheless, the State argued that the decision in *Malady* implied that § 43:21–16 has the same element of intent as does 11 U.S.C. § 523(a)(2)(A), because, as the State urged, *"mens rea"* is the same as an intent to deceive.

On December 8, 1997, Judge Wizmur delivered an oral opinion from the bench, denying New Jersey's motion for reconsideration. She concluded that "[t]he precise question of whether the elements of fraud, including the intent to deceive, are a necessary element in

finding a violation of [N.J. Stat. Ann. § ] 43:21–16 was not addressed by that [*Malady* ] case." Transcript of Hearing Before Judge Wizmur, on Dec. 8, 1997 ("12/8/97 Tr."), at 3. Consequently, Judge Wizmur conducted her own analysis of "the actual statutory language" of § 43:21–16. *Id.* at 3. Based on this analysis, Judge Wizmur determined that the statute "reference[s] to knowledge and knowledge only. We have no intent to deceive listed as an element and I will therefore conclude that we cannot wholesale [sic] impose upon [11 U.S.C. § 523(a)(2)(A) ] by way [of] collateral estoppel the elements required to be established for nondischargeability." *Id.* at 5. Accordingly, she "den[ied] the motion for reconsideration." *Id.*

On April 22, 1998, New Jersey filed a notice of appeal in this Court from Judge Wizmur's denial of the motion for reconsideration. In its brief in support of its appeal, New Jersey argued, for the first time on appeal, that the Bankruptcy Court lacked jurisdiction to hear the adversary proceeding because New Jersey had not waived its Eleventh Amendment sovereign immunity. The State also argued, in the alternative, that § 43:21–16 contains the same intent element as § 523(a)(2)(A) and, therefore, this Court is required, as a matter of law, to find that Chen acted with the intent to deceive. In his opposition to the appeal, Chen argued that New Jersey had consented to suit by filing an adversary complaint in the Bankruptcy Court and that Judge Wizmur correctly determined that Chen did not have an intent to deceive.

## II. DISCUSSION

This Court sits as an appellate Court, reviewing the determinations of the Bankruptcy Court *de novo* on issues of law, and for clear error as to its factual findings. *See In re Trans World Airlines, Inc.,* 145 F.3d 124, 130 (3d Cir.1998) (" 'In reviewing the bankruptcy court's determinations, we exercise the same standard of review as the district court,' *Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc.,* 57 F.3d 1215, 1223 (3d Cir.1995), that is, we review the bankruptcy court's legal determinations

de novo, its factual findings for clear error and its exercise of discretion for abuse thereof."); *Family Kingdom, Inc. v. EMIF New Jersey Ltd. Partnership (In re Family Kingdom, Inc.),* 225 B.R. 65, 68–70 (D.N.J.1998) (Orlofsky, J.). This appeal, however, presents only questions of law.

### A. Sovereign Immunity

New Jersey argues, for the first time on appeal, that the Bankruptcy Court did not have jurisdiction to hear the adversary proceeding because New Jersey did not waive its Eleventh Amendment sovereign immunity. Brief of Plaintiff/Appellant, State of New Jersey, filed May 11, 1998, at 8. The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. The Amendment also precludes a suit by a citizen of a state against his or her own state or any agency or department thereof. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

The body of jurisprudence which has developed analyzing the sovereign immunity conferred upon the States by the Eleventh Amendment is a shifting morass of confusion. *See* John J. Gibbons, *The Eleventh Amendment and State Sovereign Immunity: A Reinterpretation,* 83 Col. L.Rev. 1889, 1891 (1983) ("The eleventh amendment today represents little more than a hodgepodge of confusing and intellectually indefensible judge-made law."); *see also* William A. Fletcher, *Construction of an Affirmative Grant of Jurisdiction Rather than a Prohibition Against Jurisdiction,* 35 Stan. L.Rev. 1033, 1033 (1983) (suggesting that "[t]he [E]leventh [A]mendment is one of the Constitution's most baffling provisions"). The Supreme Court has not addressed, and the lower federal courts cannot agree, whether sovereign immunity is a question of subject matter jurisdiction. *See Wisconsin Dep't of Corrections v. Schacht,* —— U.S. ——, ——, 118 S.Ct. 2047, 2054, 141 L.Ed.2d 364 (1998)

(observing "that [whether] Eleventh Amendment immunity is a matter of subject matter jurisdiction [is] a question we have not decided"); *compare Blue v. Widnall,* Civil Action No. 97–15107, 162 F.3d 541, 544–45 (9th Cir. 1998) ("Whether the government waives its sovereign immunity is a question of subject matter jurisdiction.") *and Federal Express Corp. v. United States Postal Serv.,* 151 F.3d 536, 539 (6th Cir.1998) ("The federal courts may exercise subject matter jurisdiction over a cause prosecuted against a federal agency only if the United States has consented to be sued by waiving sovereign immunity.") *with Smith v. Cromer,* 159 F.3d 875, 883 (4th Cir.1998) (Phillips, J., dissenting) (holding that "sovereign immunity to suit, being waivable, is not actually a limitation on the subject matter jurisdiction of courts") *and Genentech, Inc. v. Regents of the University of California,* 143 F.3d 1446, 1453 (Fed.Cir. 1998) ("The Eleventh Amendment is not directed to the competence of the federal courts, but 'enacts a sovereign immunity from suit, rather than a nonwaivable limit on the federal judiciary's subject matter jurisdiction.' ") (quoting *Idaho v. Coeur d'Alene Tribe,* 521 U.S. 261, 117 S.Ct. 2028, 2033, 138 L.Ed.2d 438 (1997)) *and Mitchell v. Commission on Adult Entertainment Establishments,* 12 F.3d 406, 409 (3d Cir.1993) (holding that "[t]he [E]leventh [A]mendment is quasi-jurisdictional") *and Benning v. Board of Regents of Regency Universities,* 928 F.2d 775, 778 n. 2 (7th Cir.1991) (holding that "the Eleventh Amendment doctrine of sovereign immunity, though often characterized as jurisdictional, does not function as a true jurisdictional bar").

As a result, it has become a daunting intellectual challenge to wade through the quagmire of cases analyzing the issue of Eleventh Amendment sovereign immunity to determine under what circumstances a state waives its immunity. *Cf. Schacht,* —— U.S. at ——, 118 S.Ct. at 2055 (Kennedy, J., concurring) (noting the "hybrid nature of the jurisdictional bar erected by the Eleventh Amendment," which "bears substantial similarity to personal jurisdiction requirements," but "is more consistent with ... the federal courts' subject-matter jurisdiction"); Erwin

Chemerinsky, *Federal Jurisdiction* 405 (commenting that "allowing ... waivers seems inconsistent with viewing the Eleventh Amendment as a restriction on the federal courts' subject matter jurisdiction").

■ Nonetheless, it is well-settled that a state may raise the defense of Eleventh Amendment sovereign immunity for the first time on appeal. *See Sosna v. Iowa,* 419 U.S. 393, 396 n. 2, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975) (holding that "the failure of the State to raise the defense of sovereign immunity in the District Court [does not] bar[ the State] from raising that issue in [the Supreme] Court"); *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 467, 65 S.Ct. 347, 89 L.Ed. 389 (1945) ("The Eleventh Amendment declares a policy and sets forth an explicit limitation on federal judicial power of such compelling force that this Court will consider the issue arising under this Amendment ... even though raised for the first time in this Court."); *College Savs. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 948 F.Supp. 400, 414 (D.N.J.1996) (Brown, J.)' ("The Eleventh Amendment defense sufficiently 'partakes of the nature of a jurisdictional bar so that it need not be raised in the trial court.' ") (quoting *Florida Dep't of State v. Treasure Salvors, Inc.,* 458 U.S. 670, 683 n. 18, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982)).

■ It is also well-settled that "a State may waive [sovereign immunity] at its pleasure ... as by a general appearance in litigation in a federal court ... or by statute." *Petty v. Tennessee–Missouri Bridge Com'n,* 359 U.S. 275, 276, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959) (citations omitted); *see also Schacht,* —— U.S. at ——, 118 S.Ct. at 2056 (Kennedy, J., concurring) (holding that "a State's voluntary intervention in a federal court action to assert its own claim constitute[s] a waiver of the Eleventh Amendment"); *Gunter v. Atlantic Coast Line Railroad Co.,* 200 U.S. 273, 284, 26 S.Ct. 252, 50 L.Ed. 477 (1906) (holding that "where a State voluntarily bec[a]me a party to a cause and submits its rights for judicial determination, it will be bound thereby and cannot escape the result of its own voluntary act by invoking the prohibitions of the Eleventh Amendment"); *Clark v. Bar-*

*nard,* 108 U.S. 436, 446, 2 S.Ct. 878, 27 L.Ed. 780 (1883) ("The immunity from suit belonging to a state, which is respected and protected by the [C]onstitution with the limits of the judicial power of the United States, is a personal privilege which it may waive at pleasure; so that in a suit otherwise well brought, in which a state had sufficient interest to entitle it to become a party defendant [voluntarily], its appearance in a court of the United States would be a voluntary submission to its jurisdiction."); *Skehan v. Board of Trustees,* 669 F.2d 142, 149 (3d Cir.), *cert. denied,* 459 U.S. 1048, 103 S.Ct. 468, 74 L.Ed.2d 617 (1982) (noting that a state can waive Eleventh Amendment sovereign immunity "by a general or voluntary appearance in federal court by an officer of the state, such as the attorney general"); *New Jersey Department of Environmental Protection v. Gloucester Environmental Management Servs., Inc.,* 923 F.Supp. 651, 661 (D.N.J. 1995) (Simandle, J.) ("Even before *Gunter,* a state's waiver of Eleventh Amendment immunity by voluntary appearance was well-established.").

 In *In re Sacred Heart,* the Third Circuit held that 11 U.S.C. § 106(a) "is unconstitutional to the extent that it purports to abrogate state sovereign immunity in federal court." *In re Sacred Heart Hospital,* 133 F.3d 237, 245 (3d Cir.1998). The result of this decision is that a state does not automatically and necessarily waive sovereign immunity by filing a proof of claim. That is, the state may still raise the defense of sovereign immunity after filing a proof of claim, however, the state must do so at the outset. Otherwise, its voluntary entrance into the federal forum will constitute a waiver of sovereign immunity. *See In re Creative Goldsmiths,* 119 F.3d 1140, 1148 (4th Cir.1997) (holding that "to the extent a defendant's assertions in a state-instituted federal action, including those made with regard to a state-filed proof of claim in a bankruptcy action, amount to a compulsory counterclaim, a state has waived any Eleventh Amendment immunity against that counterclaim in order to avail itself of the federal forum"); *cf. Sacred Heart,* 133 F.3d at 240–41 (noting that "because Sacred Heart never argued that its claims were raised to offset [the proof of claims filed by the state] pursuant to 11 U.S.C. § 106(c), the district court found this issue waived").

 In this case, New Jersey voluntarily entered the federal forum. Chen filed a petition for bankruptcy under Chapter 7. He did not file a suit against New Jersey. New Jersey, however, filed its own adversary complaint to determine the dischargeability of the debt owed to it by Chen and, thus, sought the aid of a federal court in resolving the merits of its claim. Because New Jersey voluntarily entered a general appearance in the Bankruptcy Court, it waived its Eleventh Amendment immunity with respect to the claim presented. Had "the state expressly declined to become a party to the suit, and appeared only to protest against the exercise of jurisdiction by the court," it would have preserved its Eleventh Amendment sovereign immunity. *Clark v. Barnard,* 108 U.S. 436, 448, 2 S.Ct. 878, 27 L.Ed. 780 (1883). In other words, a state may only preserve the defense of sovereign immunity without raising it if the state does so as an involuntary defendant, and not as a plaintiff, intervener, interpleader, or by filing a proof of claim. Simply put, when New Jersey filed its adversary complaint and failed to plead sovereign immunity, it waived the defense.

New Jersey tries to avoid this conclusion by arguing that it was not really a plaintiff in the adversary proceeding. It claims that:

> While the State of New Jersey is denoted as the plaintiff in this adversary action, it is not a plaintiff in the true sense of the word. It was the debtor who brought the issues to court when he named his creditors, including the State of New Jersey, as parties against whom he sought a discharge.... At best, the State of New Jersey is an involuntarily [sic] plaintiff, if not a *de jure* respondent.

Brief of Plaintiff/Appellant, State of New Jersey, filed May 11, 1998, at 9–10. This argument, however, is inconsistent with the numerous Supreme Court decisions that have held that even if a state voluntarily enters a federal forum as a defendant, it must raise the defense of sovereign immunity or lose it. *See, e.g., Schacht,* —— U.S. at ——, 118 S.Ct.

at 2056 (Kennedy, J., concurring) (holding that "a State's voluntary *intervention* in a federal court action to assert its own claim constitute[s] a waiver of the Eleventh Amendment") (emphasis added). In *Clark v. Barnard*, for example, the Supreme Court held that:

> The immunity from suit belonging to a state, which is respected and protected by the [C]onstitution within the limits of the judicial power of the United States, is a personal privilege which it may waive at pleasure; so that in a suit otherwise well brought, in which a state had sufficient interest to entitle it to *become a party defendant*, its appearance in a court of the United States would be a voluntary submission to its jurisdiction.

*Clark v. Barnard*, 108 U.S. 436, 446, 2 S.Ct. 878, 27 L.Ed. 780 (1883)(emphasis added). Thus, had New Jersey entered a special appearance to contest the jurisdiction of the Bankruptcy Court to discharge the debt owed by Chen to the State, then the State would have succeeded. Since New Jersey voluntarily entered the federal forum and argued the merits of its claim, it waived its Eleventh Amendment sovereign immunity.

■ In *Ford Motor Co.*, the Supreme Court held that once a court has determined that a state has waived sovereign immunity, the court must then ensure that "it is within the power of the administrative and executive officers of [the state] to waive the state's immunity." *Ford Motor Co.*, 323 U.S. at 467, 65 S.Ct. 347. To do so, the court must first ascertain whether the "issue has ... been determined by state courts." *Id.; see also In re Creative Goldsmiths*, 119 F.3d 1140, 1148 (4th Cir.1997) (holding that the court must "look to state law when a state has voluntarily initiated an action in federal court to determine whether the state officer is authorized to proceed in federal court").

New Jersey state courts have determined that the Attorney General of New Jersey has the power to waive the state's sovereign immunity. The New Jersey Attorney General has "the exclusive power to control all litigation to which the State is a party[,] ... absent a statutory modification of the Attorney General's power." *Perillo v. Dreher*, 126 N.J.Super. 264, 272, 314 A.2d 74 (N.J.Super.A.D.1974); *see also* N.J. Stat. Ann. § 52:17A–4 (providing the Attorney General with "exclusive[ ] ... control [over] all litigation and controversies to which the State is a party or in which its rights and interests are involved"). This power includes the ability to "waive[ ] the defense of sovereign immunity." *Perillo*, 126 N.J.Super. at 272, 314 A.2d 74 (holding that only the State legislature, in passing a statute, or the Attorney General, through litigation, can waive the State's sovereign immunity); *see also Alexander v. New Jersey Power & Light Co.*, 21 N.J. 373, 380, 122 A.2d 339 (1956) (holding that "the Attorney–General has the right, save as provided otherwise by the lawmaker, to intervene by suit for the protection of the property of the sovereign or the interests of the public, where such are directly involved"). Further, this Court's research has unearthed no constitutional provision, statute, or judicial decision that indicates that New Jersey law has "strongly circumscribed" the New Jersey "Attorney General's power to waive the state's immunity under the Eleventh Amendment." *Cf. Creative Goldsmiths*, 119 F.3d 1140, 1149 (holding that Maryland "State courts maintain [a] requirement of legislative authorization for waiver of immunity despite the fact that" the Maryland Constitution provides the Maryland Attorney General with the power to litigate all cases in federal courts in which the State is a party). Thus, I conclude that the Attorney General of New Jersey and his or her assistants and deputies have the power to waive sovereign immunity on behalf of the State of New Jersey. Accordingly, I now find that the State has waived its Eleventh Amendment immunity in this case. Therefore, I must now address the merits of the appeal.

**B. Issue Preclusion**

■ State court judgments "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State." 28 U.S.C. § 1738; *see also Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) ("Congress has specifically required all fed-

eral courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would so do."). "It has long been established that [the Full Faith and Credit Statute] does not allow federal courts to employ their own rules of res judicata [or issue preclusion] in determining the effect of state judgments." *Kremer v. Chemical Constr. Co.,* 456 U.S. 461, 481–82, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). "This statute directs a federal court to refer to the preclusion law of the State in which the judgment was rendered." *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985); *see also Kremer,* 456 U.S. at 482, 102 S.Ct. 1883 (holding that a federal court must "accept the rules chosen by the State from which the judgment is taken"). Thus, I must look to New Jersey law with respect to the rules of issue preclusion.

■ To invoke the preclusive effect of an earlier New Jersey state court judgment, "New Jersey law . . . requires that the issue presented in the later action must be identical to the issue decided in the earlier adjudication." *Hernandez v. Region Nine Housing Corp.,* 146 N.J. 645, 659, 684 A.2d 1385 (1996). Judge Wizmur denied the State's motion for reconsideration, because she found that the elements of the state statute that Chen was found to have violated in State Court, namely N.J. Stat. Ann. § 43:21–16, were not the same as those she was required to find under 11 U.S.C. § 523(a)(2)(A), in order to deem the debt nondischargeable. New Jersey had argued in its brief supporting its motion for reconsideration that the *mens rea* element, required by New Jersey case law, to find a violation of § 43:21–16 is the same as the "intent to deceive" element necessary to find a debt nondischargeable under § 523(a)(2)(A). Judge Wizmur denied the State's motion for reconsideration, holding that § 43:21–16 and § 523(a)(2)(A) do not have the same element of intent. As this is a question of law, this Court reviews it *de novo. See In re Trans World Airlines, Inc.,* 145 F.3d 124, 130 (3d Cir.1998); *Family Kingdom, Inc. v. EMIF New Jersey Ltd. Partnership (In re Family Kingdom, Inc.),*

225 B.R. 65, 68–70 (D.N.J.1998) (Orlofsky, J.).

■ To determine that a debt is nondischargeable under 11 U.S.C. § 523(a)(2)(A), the court must find that the debtor made the false statement with the intent to deceive the creditor. *See In re McMillan,* 579 F.2d 289 (3d Cir.1978). By contrast, to find that a person has violated N.J. Stat. Ann. § 43:21–16, the court must only find that the person made a false statement. *See* N.J. Stat. Ann. § 43:21–16(a).

Relying on the Appellate Division's interpretation of § 43:21–16 in *Malady,* New Jersey argues that § 43:21–16 required the State Court to find that Chen acted with *mens rea. See Malady v. Board of Rev.,* 166 N.J.Super. 523, 529, 400 A.2d 119 (N.J.Super.A.D.1979) (holding that § 43:21–16 "requires a culpable *Mens rea* as a condition to the imposition of the penalties authorized"). In *Malady,* the Appellate Division reviewed the proper procedures under § 43:21–16 to impose a civil penalty on a person who makes false statements to obtain unemployment insurance. *See id.* at 528, 400 A.2d 119. Specifically, the issue before the Appellate Division was the type of hearing and notice required by the Due Process Clause of the United States Constitution before New Jersey could impose such sanctions. *See id.* at 528–36, 400 A.2d 119. The Appellate Division, however, discussed the issue of intent in only one sentence of the *Malady* opinion, in which the Appellate Division held: "While the statute requires a culpable *Mens rea* as a condition to the imposition of the penalties authorized, it is primarily civil in nature." Nevertheless, New Jersey relied upon this one sentence to argue that the Appellate Division had determined that § 43:21–16 has the same element of intent as does 11 U.S.C. § 523(a)(2)(A), because, as the State urged, *"mens rea"* is the same as an intent to deceive.

Judge Wizmur concluded that the one sentence in *Malady* that discussed the element of intent required by § 43:21–16 was "straight dictum." 12/8/97 Tr. at 2. Further, she held that "[t]he precise question of whether the elements of fraud, including intent to deceive, are a necessary element in

**626**

finding a violation of [N.J. Stat. Ann. § ] 43:21–16 was not addressed by the *Malady* case." *Id.* at 3. Instead, Judge Wizmur considered "the actual statutory language" of the statute and concluded that the statute makes "reference to knowledge and knowledge only." *Id.* at 5. She held that the statute has "no intent to deceive listed as an element," and, therefore, a finding of fraud under § 43:21–16 could not have preclusive effect when determining the dischargeability of a debt under § 523(a)(2)(A).

"*Mens rea*" is defined as "a guilty mind" or "a criminal intent." Black's Law Dictionary 985 (6th ed.1990). With the exception of the imposition of civil penalties based on strict liability, all statutory violations require that the person act with *mens rea*, that is, the person must act with the intent to commit the requisite act. This is general intent. By contrast, "intent to deceive" is "a special mental element which is required above and beyond any mental state required with respect to the *actus reus* of the [violation]." *Id.* at 1399. In other words, an intent to deceive requires proof of a specific intent. Thus, the intent to deceive under § 523(a)(2)(A) of the Bankruptcy Code requires proof of a higher level of intent than the *mens rea* that must be found under § 43:21–16. Accordingly, I find that the element of intent required by § 43:21–16 is not identical or equivalent to that required under § 523(a)(2)(A). Therefore, I will affirm Judge Wizmur's denial of the State's motion for reconsideration.

## IV. CONCLUSION

For the reasons set forth above, I find that the State of New Jersey has waived its Eleventh Amendment sovereign immunity by entering a voluntary and general appearance in the United State Bankruptcy Court by filing an adversary complaint. I further find that Judge Wizmur correctly concluded that the element of intent required by N.J. Stat. Ann. § 43:21–16 is not identical or equivalent to the level of intent required by 11 U.S.C. § 523(a)(2)(A) and, therefore, the State Court judgment cannot have preclusive effect on the issue of dischargeability. According-

ly, I will affirm Judge Wizmur's decision in all respects.